ALLAN J. GRAY, Appellant, *v.* RICHMOND BICYCLE COMPANY, Respondent.

1. JUDGMENT — MERGER OF CAUSE OF ACTION ON PROMISSORY NOTE IN JUDGMENT THEREON. A judgment in another state against the maker of a promissory note obtained by the payee thereof is a bar to an action in this State against the maker by a transferee after maturity, unless the payee was induced to secure the judgment by the fraud of the maker.

2. WHEN QUESTION WHETHER JUDGMENT IS FRAUDULENT IS FOR JURY. The question whether the judgment was procured by the fraudulent representations and concealments of the maker is for the jury where it appears that its president, in possession of its property as agent under mortgages for the benefit of certain creditors, wrote to the payees apparently to induce them to place their notes, not yet due, in the hands of certain attorneys recommended by him, so that judgment could be taken upon them under the terms of the mortgage, which would be a ratification of such mortgage, making the mis-statement that the assets were sufficient to pay all preferred claims, and omitting to state that the mortgage including the payees' claim was second to another given at the same time, that their claim was by the terms thereof subject to the prior payment of all other mortgages, and that the attorneys recommended were acting for the first mortgagee, who would derive the greatest benefit from the ratification of the mortgage, and it appears that there was property in the state of the payees' residence which might be attached to the loss of such maker and the other preferred claimants if such payees did not come in under the mortgage.

3. RELIEF FROM FRAUDULENT FOREIGN JUDGMENT MAY BE GRANTED BY COURTS OF THIS STATE. Relief may be obtained from the judgment, if fraudulent, without application to the courts of the other state, and it cannot be indirectly enforced as a bar to the action, since a court of this state may, where it has jurisdiction of the parties, determine the question whether a judgment between them, rendered in another state, was

obtained by fraud, and, if so, may enjoin the enforcement of it, although its subject-matter is situated in such other state.

4. RATIFICATION OF JUDGMENT AND LACHES WHEN A QUESTION FOR JURY. The question whether the payees ratified the judgment or were guilty of *laches* in disclaiming it is also for the jury where it appears that they knew some facts and had an opportunity to know more.

*Gray* v. *Richmond Bicycle Co.,* 40 App. Div. 506, reversed.

(Argued April 24, 1901; decided June 4, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 5, 1899, affirming a judgment in favor of defendant entered upon a verdict directed by the court and an order denying a motion for a new trial.

This action was brought upon a promissory note for the sum of $1,493.13 made by the "Richmond Bicycle Company," a corporation of Indiana, to the order of "Allerton-Clarke Co.," a corporation of Illinois, dated August 14th, 1897, payable 60 days thereafter and transferred to the plaintiff after maturity. The defense alleged was a merger of said note in a judgment recovered thereon by the payee in a court of Indiana, on the 29th of September, 1897. The issue tried was whether said judgment was procured through the fraud of the maker, the defendant in this action.

The defendant carried on a manufacturing business at Richmond, Indiana. On the 23rd of September, 1897, it failed, owing the Second National Bank of Richmond $13,000, Daniel G. Reid, a director of said bank, $6,000, M. H. Dill, its own vice-president, $3,000, and smaller sums to other residents of Indiana. It also owed Main & Monroe of New York city, $1,000, and the Allerton-Clarke Co., doing business in that city, the note in suit and another for $3,144.97, neither of which was due. On the 22nd of September, 1897, it paid Mr. Dill in full, although his claim was not then due. The next day it mortgaged all its real and personal property to said bank to secure its entire claim, and gave a second mortgage to Daniel G. Reid, Mary Snodgrass, Henry Schurman, executor, Main & Monroe and Allerton-Clarke Co. to secure their claims,

amounting to $15,638.10, in the order named. The mortgage provided that if default should be made in the payment of any of said claims when they fell due, or if the mortgagor should be sued by any of its creditors, or if the mortgagees should "for any reason feel insecure as to the payment" of their claims, the same should "thereupon immediately become due, and the said mortgage may be foreclosed" and a receiver appointed. It further provided that "William N. Wilson, who is an officer of said corporation, shall remain in charge and control of the said personal property, for and on behalf of the said mortgagees, and shall have the right to carry on the business of the said Richmond Bicycle Company in the manner in which the same has heretofore been carried on, except as hereinafter provided." At the end of the instrument, which was very long, was a clause making it second and subordinate to the bank mortgage and providing for priority of the mortgagees in the second mortgage "over each other" in the order above named. The Allerton-Clarke Co. was last, and their security was thus made subject to prior claims amounting to $24,000. The mortgaged property, when finally sold by a receiver, realized enough to pay the claim of the bank in full and nearly all of the claim of Mr. Reid, the creditor first preferred in the second mortgage.

The day after the mortgages were given, William N. Wilson, who was president of the Richmond Bicycle Company, wrote in its name and under its letter head, to Allerton-Clarke Co. as follows: "At a meeting of the directors held the 23rd day of Sept. it was decided best to give you a mortgage for the amount of our indebtedness to you, as shown by our bills payable book. This mortgage was recorded Sept. 24th and shows that we are indebted to you to the amount of two notes (describing them). This mortgage covers all the real estate, machinery, accounts and all the personal property of every description, and assets belonging to the said company to secure the payment of these notes. The same mortgage covers notes of D. G. Reid, Mary Snodgrass, Henry Schurman and Main & Munroe. You will find that the property will be ample to

pay the notes. In this mortgage W. N. Wilson is named as agent to have charge of the property." The next day Mr. Wilson wrote in his own name, under the letter head, "Jackson & Starr, Attorneys at Law, Second National Bank Building," and said : "The Richmond Bicycle Co. has executed a mortgage securing your claim along with the claims of Daniel G. Reid, Mary Snodgrass, W. N. Wilson, George Schurman and Main & Monroe. The assets of the company are ample to pay all of these preferred claims. On next Tuesday judgment on all of these claims except yours will be taken by our attorneys, Jackson & Starr. It is to your interest to have judgment taken on the same day in the same proceeding. Please wire Jackson & Starr to represent you in the proceeding and protect your claim. We will see that you are protected."

On the 27th of September, 1897, on receipt of these letters, Allerton-Clarke Co. telegraphed Jackson & Starr, "take judgment on our claim against Richmond Bicycle Co. Wire reply." The firm of Jackson & Starr had before this done some business for the Allerton-Clarke Co. in drawing contracts and making collections from their customers. They were also the regular attorneys for the Second National Bank of Richmond and had attended to all its law business for a number of years, but this was unknown to Allerton-Clarke Co.

A telegram, apparently sent by Jackson & Starr to Allerton-Clarke Co., was not put in evidence, but September 28th the latter wrote to the former stating : "We received your telegram and beg to notify you that we will forward you notes when we receive the same from the bank as they are under discount. We will be glad to hear that you have obtained a judgment on our claim." Jackson & Starr answered this letter on the 30th saying that "your judgment is all ready for entry as soon as we receive the original notes," which were never forwarded. Allerton-Clarke Co. replying October 2nd said : "Before proceeding further in this matter, we would like to know from you what advantage we derive by turning our

claim into a judgment.    Are we not secured by a mortgage, and will we gain anything further by obtaining a judgment? We would feel obliged if you will send us a copy of the mortgage by which we are secured, and give us any information you can regarding the same."    October 4th, Jackson & Starr answered, inclosing a copy of the mortgage, gave certain reasons why they thought it best to put all the claims in judgment, and closed by asking " whether you wish to join in the application for a receiver, which will probably be made next week," and for further instructions.    No further instructions were given.    Allerton-Clarke Co. examined the copy of the mortgage, but did not read it through and overlooked the clause at the end giving priority over their own to all other claims described by the two mortgages.

A decree of the Wayne Circuit Court of Indiana, entered about the 1st of October, 1897, shows that the Second National Bank of Richmond commenced an action to foreclose its mortgage by Jackson & Starr, its attorneys, who also appeared separately and answered and filed a cross-complaint for each of the following defendants therein : Daniel G. Reid, Mary Snodgrass, Henry Schurman, executor, Main & Monroe and the Allerton-Clarke Co.    The decree established the various claims, awarded judgment upon each against the Richmond Bicycle Co., and allowed Jackson & Starr $440 for their services as attorneys for the plaintiff, and the following sums for their services as attorneys for the said five defendants in the same action : Daniel G. Reid, $243 ; Mary Snodgrass, $65 ; Henry Schurman, executor, $151 ; Main & Monroe, $65 ; Allerton-Clarke Co., $194.    The priorities of the respective creditors were also established according to the mortgages and judgment of foreclosure was rendered.    October 9th a receiver was appointed upon the motion of Jackson & Starr, made in behalf of all the mortgagees in both mortgages, although they had received no " further instructions" from Allerton-Clarke Co.

October 18th, Jackson & Starr telegraphed Allerton-Clarke Co. to send a representative at once to protect their interests,

and they sent one of their traveling agents for that purpose, who reached Richmond on the 19th. He was consulted as to the disposition to be made of the stock, but did not learn that the New York creditors were not protected the same as the others, and did not remember that anything was said about a judgment. Another representative went to Richmond November 8th and was informed that judgment had been entered, but he supposed it was simply a foreclosure of the mortgage. Upon his return this action was commenced, the complaint having been verified Nov. 6th, and at the time Allerton-Clarke Co. had no knowledge that judgment had been entered upon its notes. While there was some conflict in the evidence the jury might have found the facts as thus stated, but the case was not submitted to them, as the court directed a verdict in favor of the defendant, although the plaintiff asked to go to the jury on the question whether the judgment " was not procured by the fraudulent representations and concealments of the Richmond Bicycle Company." Upon appeal to the Appellate Division the judgment entered accordingly was affirmed and the plaintiff appealed to this court.

*Payson Merrill* for appellant. Upon the failure of the Richmond Bicycle Company, its president, officers and trustees stood in a fiduciary relation to its creditors, and in dealing with those creditors were bound by the obligations of a trustee to his *cestui que trust*. (Morawetz on Priv. Corp. [2d ed.] § 787; Perry on Trusts, § 178; *Bradley* v. *Farwell*, 1 Holmes [U. S.], 433.) The judgment invoked as a defense was a nullity, because it was procured by fraudulent misrepresentations and concealments on the part of the defendant. (*Mandeville* v. *Avery*, 124 N. Y. 376; *Russell* v. *Winne*, 37 N. Y. 591; *Southard* v. *Benner*, 72 N. Y. 424; *Keller* v. *Paine*, 107 N. Y. 83; *Warner* v. *Jaffray*, 96 N. Y. 248.) The fraud of Wilson was the fraud of the defendant. (Perry on Trusts, § 172.) Whether or not the judgment was procured by fraud was a question of fact for the jury, and it was error for the court to withdraw the consideration thereof from

the jury. (*Bagley* v. *Bowe,* 105 N. Y. 171 ; *Smith* v. *Coe,* 55 N. Y. 678 ; *F. Nat. Bank* v. *Dana,* 79 N. Y. 108 ; *Stokes* v. *Mackay,* 140 N. Y. 640.) If the Indiana judgment was recovered by fraud of the defendant, it was not necessary for the plaintiff to go into that state to obtain relief. (*Davis* v. *Cornue,* 151 N. Y. 172.)

*John S. Melcher* for respondent. The Indiana judgment merged the note and extinguished the right to sue on it. (*Teel* v. *Yost,* 5 N. Y. Supp. 5 ; *Nicholl* v. *Mason & Spaulding,* 21 Wend. 339 ; *Besley* v. *Palmer,* 1 Hill, 482 ; *M. S. Bank* v. *Pierce,* 137 N. Y. 444.) There was no conflicting evidence on the issue of fraud, and, therefore, no question for the jury. (*Jonasson* v. *Eames,* 21 N. Y. Supp. 714 ; *Dwight* v. *G. L. Ins. Co.,* 103 N. Y. 341.) The facts, as proved, were not sufficient to constitute fraud. (*Chrysler* v. *Canaday,* 90 N. Y. 279 ; *W. R. Co.* v. *Tappan,* 70 Hun, 405 ; *Hunt* v. *Hunt,* 72 N. Y. 227 ; *Miner* v. *Daly,* 69 Hun, 337 ; *C. Watch Co.* v. *Hodenpyl,* 135 N. Y. 430.) A judgment cannot be impeached for fraud if there is negligence on the part of the complaining party. (*Kinnier* v. *Kinnier,* 45 N. Y. 535 ; *Ross* v. *Wood,* 70 N. Y. 8 ; *Ward* v. *Town of Southfield,* 102 N. Y. 287 ; *Smith* v. *Nelson,* 62 N. Y. 286.) Facts to prove fraud must be inconsistent with any other theory. (*Morris* v. *Talcott,* 96 N. Y. 100 ; *Constant* v. *University of Rochester,* 133 N. Y. 640 ; *Shultz* v. *Hoagland,* 85 N. Y. 464.)

VANN, J. A cause of action is merged in a judgment rendered upon it, not only for the reason that a judgment is of a higher nature, but because it would be vexatious to the one party and of no benefit to the other to permit the recovery of two judgments against the same person for one debt. (*Davies* v. *Mayor, etc., of N. Y.,* 93 N. Y. 250, 254 ; *Nicholl* v. *Mason & Spaulding,* 21 Wend. 339 ; *Wayman* v. *Cochrane,* 35 Ill. 152 ; *Hogg* v. *Charlton,* 25 Penn. St. 200 ; *Marshall* v. *Stewart,* 65 Ind. 243 ; Freeman on Judgments, § 215 ; 15 Amer. & Eng. Encyclo. of Law [1st ed.], 336.) As a

judgment of a court in any state is entitled to full faith and credit in the courts of all the states, it is a merger of the cause of action in every part of the Union. (*Besley* v. *Palmer*, 1 Hill, 482; *Mills* v. *Duryee*, 7 Cranch, 481; *Hampton* v. *M'Connel*, 3 Wheat. 232.)

The judgment of the Circuit Court of Indiana, rendered upon the promissory note in suit, is, therefore, a bar to this action, unless the plaintiff made out a case of fraud in securing jurisdiction of his assignor, sufficient for the consideration of the jury. He insists that the appearance of Jackson & Starr as attorneys for Allerton-Clarke Co. was procured by fraud, and, consequently, that the Indiana court had no jurisdiction of that corporation. He further insists that as such appearance was procured by the fraud of the defendant in this action, it is estopped from invoking the judgment thus recovered by it as a bar. The defendant expressly admits that " even a foreign judgment may be successfully assailed for fraud in its procurement." As both parties concede that a judgment, recovered in a sister state through the fraud of one party in procuring the appearance of another, is not binding on the latter when an attempt is made to enforce such judgment in this state, we shall proceed without further discussion to consider the question whether the evidence would have authorized the jury to find the defendant guilty of fraud in the premises. (*Davis* v. *Cornue*, 151 N. Y. 172; *Hunt* v. *Hunt*, 72 N. Y. 217; Freeman on Judgments [4th ed.], § 576; Black on Judgments, § 903.)

At the commencement of the correspondence between the parties the relation of debtor and creditor existed between them, and the defendant, as the debtor, had given a mortgage to Allerton-Clarke Co., as the creditor, without its knowledge or consent. That mortgage, and another ahead of it, covered all the property of the mortgagor, worth about $20,000, and the claim of Allerton-Clarke Co., the mortgagee standing last upon the list of those purporting to be secured, was subject to prior claims amounting to $24,000. As Allerton-Clarke Co. stood a poor chance of collecting their debt

except by attacking the mortgage, the defendant may have had an object in inducing them to take judgment and thereby to ratify the mortgage. It may have intended that they should become bound by it and unable to overturn it upon the ground of fraud, of which there was some evidence. Moreover, the defendant had property in this state which might be attached here, with danger of loss to the defendant and its friends in Indiana, unless the New York creditors could be induced to come in under the mortgage. The parties did business in different states and were so widely separated from each other that Allerton-Clarke Co. knew nothing of what had been done until they were informed by the defendant. While the defendant was not legally bound to speak at all, it was bound, if it did speak, to take no advantage, either by misrepresentation or concealment. If it broke silence, the circumstances required the utmost candor in every statement. It spoke through Mr. Wilson, its president, who had executed the mortgages for the defendant and knew all the facts. Under these circumstances, whatever he wrote in relation to the situation was the act of the defendant and the rule of *uberrima fides* applied to every statement made and every fact withheld. He could not mislead the creditors, nor willfully cause them to act on what they believed were the facts when he knew they so believed, but also knew the facts to be materially different. While the law did not make it his duty to write, it required him to exercise the utmost good faith and to make a full and fair disclosure when he volunteered to write.

He wrote, apparently, to induce Allerton-Clarke Co. to place their notes in the hands of certain attorneys recommended by him, so that judgment could be taken upon them, which would be a ratification of the mortgage, as their claims were not due except by virtue of its provisions. Either with or without a furtive intent he made one material mis-statement and suppressed three material facts. He stated that the assets of the defendant were ample to pay all the preferred claims, and omitted to state that the mortgage to Allerton-

Clarke Co. was second to that of the Second National Bank
for $13,000, given at the same time; that it could get no
advantage from the mortgage until all the other mortgagees
whose claims amounted to $24,000 were paid in full, and that
the attorneys recommended were acting for the Second
National Bank, the party that would derive the greatest bene-
fit from a ratification of the mortgage. The mis-statement,
the omissions and the surrounding circumstances should be
considered together, for facts of trifling importance, when
considered separately, may afford clear evidence of fraud when
considered in connection with each other. While the expres-
sion in the first letter, "you will find that the property will
be ample to pay the notes," may have been intended simply
as an opinion, it may have been intended to divert attention
and prevent inquiry. This is true of a similar expression in
the second letter, although it assumed the form of a state-
ment of fact, viz.: "The assets are ample to pay all of these
preferred claims." While according to the general rule no
one is liable for the expression of an opinion, "this is true
only when the opinion stands by itself," for "it may be so
expressed as to bind the person making it to its truth,
whether it take the form of an opinion or not." (*Hickey* v.
*Morrell*, 102 N. Y. 454, 463.) The opinion, which was evi-
dently intended to induce action by Allerton-Clarke Co., does
not stand alone in this case, for it must be considered in con-
nection with the suppression of the three facts above men-
tioned. Those facts may have been withheld either by acci-
dent or design, and it is not for the court to decide whether
the purpose was honest or dishonest. Good faith required the
writer not to take advantage of his correspondent, and he
may have acted with or without an intent to deceive; it was
for the jury to say. It may have been simply the uninten-
tional omission of one writing in a hurry to state all the facts,
or it may have been done willfully with a deceitful purpose to
cause Allerton-Clarke Co. to believe what was not true and to
act under a fraudulent concealment of the actual state of
affairs.

After assuring Allerton-Clarke Co. that they were secured, that the assets were ample to pay the mortgages, and that " we will see that you are protected," it is a suggestive omission that no allusion is made to the large mortgage. So, after stating that " your claim, *along with* " the four others named, is secured by a mortgage, it is significant that there is a failure to state that such claim was subordinate to all the others. The statement in the first letter that the mortgage covered all the property and was ample to pay " these notes," and in the second to pay " these preferred claims," with no mention of the large mortgage ahead of these notes and claims, tended to mislead. The assertion of certain material facts in connection with an assurance of safety might well be regarded as a declaration that no other material fact existed. A telegram conferring authority for an appearance by attorneys was requested instead of a letter, and this tended to prevent investigation. Mr. Wilson may have realized, when writing a letter calling for immediate action in order to avoid the loss of a benefit purporting to have been conferred, that the undisclosed facts, if known to Allerton-Clarke Co., might induce them to refuse to act as requested or to thus ratify the mortgage. If so, it became his duty to speak, yet he remained silent, and the jury might properly have found that his silence was part of a scheme to defraud.

Evidence was given tending to show that the Indiana judgment was entered September 29th, and if so, the letter of September 30th from Jackson & Starr, that judgment was ready for entry on receipt of the notes, which were never forwarded, was misleading ; and if, as other evidence tended to show, the judgment was entered October 4th, and not until after the receipt of the letter of October 2nd, which virtually stayed proceedings until the receipt of further information, the judgment was entered without authority. After writing that letter Allerton-Clarke Co. had a right to believe that no further proceedings could be taken without further instructions. The facts relating to fraud and the want of authority permitted diverse inferences. The intent with which the let-

ters were written was a question of fact, for the circumstances warranted a finding of guilt or innocence. If they were written with a fraudulent intent the judgment was no bar, but if they were written with an innocent purpose, it is a conclusive defense. Questions of fraud, above all others, are for the jury, and we think it was error for the trial court to withdraw the case from them, because there is a foundation in the evidence for a conclusion either way that would not shock the sense of a reasonable man. (*Bagley* v. *Bowe,* 105 N. Y. 171, 179 ; *Smith* v. *Coe,* 55 N. Y. 678.)

It was not necessary for the plaintiff to go into the state of Indiana and obtain relief from the judgment through its courts, for, as we have held, " a court of one state may, where it has jurisdiction of the parties, determine the question whether a judgment between them, rendered in another state, was obtained by fraud, and, if so, may enjoin the enforcement of it, although its subject-matter is situated in such other state." (*Davis* v. *Cornue,* 151 N. Y. 172, 179.) The assertion of the foreign judgment as a bar in this action was an attempt to enforce it indirectly, and it was the duty of the trial court to send the case to the jury with the instruction that if they found the judgment was procured by fraud, it could not be asserted as a bar in this state.

We are also of the opinion that it was a question of fact whether Allerton-Clarke Co. ratified the judgment or were guilty of *laches.* They knew some facts and had an opportunity to know more, but whether they discovered, or should have discovered, enough to bind them or to require them to make some disclaimer before commencing this action, was for the jury, under all the circumstances, to determine. As the whole case was for the jury, the judgment should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., O'BRIEN, BARTLETT, MARTIN, LANDON and CULLEN, JJ., concur.

Judgment reversed, etc.