ELIZUR V. FOOTE, as Executor, etc., of EDWARD S. STOKES, Deceased, Respondent, v. MARY C. LEARY, as Administratrix, etc., of JAMES D. LEARY, Deceased, and DANIEL J. LEARY, Appellants.

*What answer is sufficient to justify a recovery for fraud and deceit — what evidence is sufficient to require that the question be submitted to the jury — duty of the trial court to submit the question although, if found for the defendant, the verdict should be set aside — questions of fraud are peculiarly for the jury — representation as to what the books of a hotel business show — they are presumed to show the real condition of the business — the fact that the representation is true, the books being incorrect, does not excuse the person making it.*

In an action brought upon a guaranty executed by the defendants for the payment of promissory notes which one Polley delivered to the plaintiff's testator in part payment for a number of shares of the stock of a hotel corporation, allegations contained in the defendants' answer to the effect that the plaintiff's

testator, for the purpose of inducing Polley to purchase the stock in question made oral and written statements as to the assets and liabilities of the hotel corporation; that such statements were false and known by the plaintiff's testator to be false at the time they were made; that Polley made the purchase of the stock in reliance upon such statements and in the belief that they were true and that because thereof Polley sustained certain damages which had been assigned to the defendants, are sufficient to justify a recovery for fraud and deceit.

In determining upon an appeal from a judgment in favor of the plaintiff, entered upon a verdict directed by the court, whether evidence was given entitling the defendants to go to the jury upon the question of fraud, the defendants are entitled to the most favorable inference which can be drawn from the evidence and all disputed facts are to be treated as found in their favor.

If the evidence given upon the trial raised an actual issue of fact, it was the duty of the trial court, even though he did not deem such evidence sufficient to sustain a finding in favor of the defendants upon such issue of fact, to submit the case to the jury, and, if the verdict rendered was, in its judgment, against the weight of evidence, to set it aside and order a new trial.

Questions of fraud, above all others, if evidence has been given tending to establish the same, are for the jury.

Where a person, seeking to sell a business, gives to the proposed vendee a statement of the assets and liabilities of the business as they appear from the books thereof, the proposed vendee has a right, in the absence of information to the contrary, to assume that all the assets and liabilities are on the books and, therefore, appear upon the statement.

The fact that the vendor represented the statement of assets and liabilities to be a correct statement from the books, which representation was true in point of fact, will not relieve the vendor from the charge of fraud, where it appears that all of the liabilities of the business were not entered upon the books and that this was known to the vendor.

INGRAHAM, J., dissented.

APPEAL by the defendants, Mary C. Leary, as administratrix, etc., of James D. Leary, deceased, and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 21st day of March, 1903, upon the verdict of a jury, rendered by direction of the court after a trial at the New York Trial Term, and also from an order entered in said clerk's office on the 31st day of March, 1903, denying the defendants' motion for a new trial made upon the minutes.

*John B. Stanchfield*, for the appellants.

*Charles E. Hughes*, for the respondent.

McLaughlin, J. :

On the 27th of September, 1897, Edward S. Stokes sold to Grahams Polley 1,300 shares of the capital stock of the Hoffman House, New York, a corporation organized under the laws of the State of New York, for $140,000, $25,000 of which was paid in cash and the balance with Polley's promissory notes. In consideration of James D. Leary, Daniel J. Leary and R. T. McDonald guaranteeing the payment of the notes, Stokes deposited with the Knickerbocker Trust Company $55,000 thereof to indemnify them against any liability they might sustain by reason of being sureties upon an undertaking on appeal from a judgment in an action entitled Stokes v. Stokes. The Learys and McDonald having subsequently been released from liability on the undertaking referred to, and having neglected and refused to pay the notes — which in the meantime had matured — this action was brought against the Learys alone to recover the same. After its commencement Stokes died and his executor was substituted as plaintiff. James D. Leary also died and his administratrix was substituted as a defendant.

The defendants interposed a joint answer, in which they in substance admitted the execution, guaranty of payment, delivery and non-payment of the notes in suit, and alleged, (1) as a defense and counterclaim, damages sustained by Polley in the purchase of the stock by reason of false and fraudulent statements made by Stokes as to assets and liabilities of the Hoffman House, and which damages were, prior to the commencement of the action, assigned to James D. and Daniel J. Leary; (2) as a defense and counterclaim, damages sustained by Polley in the purchase of the stock by reason of the breach of a warranty made by Stokes to the effect that the stock was valid and legally issued for money, labor performed and property received, which damages were also, prior to the commencement of the action, assigned to James D. and Daniel J. Leary; (3) a defense predicated upon facts to the effect that Stokes, through false and fraudulent statements, had induced the Learys to guarantee the payment of the notes in question.

At the opening of the trial the defendants claimed and were accorded the affirmative, and the evidence offered was directed to the issues raised by the answer. The learned trial justice, at the conclusion of the trial, on motion of plaintiff's counsel, directed a

verdict for the plaintiff for the amount of the notes, together with interest thereon, amounting to $73,067.50, and from the judgment entered thereon and an order denying a motion for a new trial, defendants have appealed.

The record presented on the appeal is a voluminous one, but the conclusion at which I have arrived renders it unnecessary to consider in this opinion but a single question, and that is, whether under the first defense and counterclaim set up in the answer, evidence was presented which should have been submitted to the jury. As to the second defense and counterclaim, as well as to the third defense, a verdict was properly directed. There was nothing to go to the jury bearing on the issues there raised, or which would have justified a finding that the counterclaim or defense pleaded had been established. But as to the first defense and counterclaim it seems to me there was evidence which should have been submitted to the jury and that the court erred, as to this, in directing a verdict.

The facts pleaded in this defense and counterclaim were in substance that Stokes, for the purpose of inducing Polley to purchase the stock, made statements — orally and in writing — as to the assets and liabilities of the corporation; that such statements were false and known by Stokes at the time they were made to be false; that the purchase was made relying upon such statements and believing them to be true; that by reason thereof, the damages stated were sustained. The facts pleaded were sufficient, if established by the evidence, to justify a recovery for fraud and deceit, and in determining whether there was evidence to go to the jury upon these questions, the appellants, of course, are entitled to the most favorable inferences which can be drawn therefrom. All disputed facts are to be treated as found in their favor. (*McDonald* v. *Met. St. Ry. Co.*, 167 N. Y. 66.) If there were an actual issue of fact, even though the trial court did not think the evidence sufficient to sustain a finding, it nevertheless was his duty to submit the case to the jury and then if the verdict rendered were, in his judgment, against the weight of evidence, set it aside and order a new trial. (*McDonald* v. *Met. St. Ry. Co.*, *supra*.) Questions of fraud, above all others, if evidence has been given tending to establish the same, are for the jury. (*Bagley* v. *Bowe*, 105 N. Y. 171; *Gray* v. *Richmond Bicycle Co.*, 167 id. 348.) Keeping in mind, therefore, the

# FOOTE v. LEARY.

rule that it was the duty of the trial court, if there were any evidence tending to establish fraud on the part of Stokes, as alleged in that part of the answer here being considered, to submit the same to the jury, let us turn to the record and see what there is on that subject.

It appeared that during the summer of 1897 Stokes was desirous of selling some or all of his stock and on September thirteenth of that year he wrote, from Hot Springs, Va., to McDonald, who received the letter a few days later in New York, saying: "As you well know I am thoroughly dissatisfied with many things that have occurred at the Hotel during my illness, and it has occurred to me that perhaps you could induce Polley to buy all of my stock and in this way relieve me. I should much prefer to sell it all than to continue with the friction that has existed and has helped to prolong my illness. Suppose you think this over and see if you can so arrange it." On the twentieth of the same month Stokes returned from Virginia to New York, and on the following day, September twenty-first, he met Polley in the private office of the Hoffman House and there had a conversation with him with reference to the purchase of the stock in question. There were present at this interview McDonald, Platner, the bookkeeper of the Hoffman House, and the witness Caddigan. Platner gave to Stokes what is designated in the record "Exhibit C," which is headed "Statement Hoffman House Co., Aug. 31, 1897," at the same time saying to him, in the presence of Polley, that it was a correct statement from the books. Stokes having examined it, gave it to Polley, saying it was a correct statement of the assets and liabilities of the Hoffman House, taken from the books, after which he turned to Polley and said: "Mr. McDonald will represent me in explaining this to you," to which McDonald assented. The parties then separated and Polley went to Platner and asked him what that statement represented, to which he replied it was a correct statement of the Hoffman House for the month of August, according to the books. The day following, or a little later, at the suggestion of McDonald, a further conference was had at the house of James D. Leary, at which there were present McDonald, Polley, the Learys and Caddigan, and in which McDonald explained the statement; asserted it was correct; that

the stock was worth 125, and that the corporation when it "got on its feet would pay 20 per cent dividends." Being asked by one of the Learys why Stokes would sell it at the price named he replied : " I have given you all the reasons why he don't want to keep it. He can't hold on. He is sick and he must sell. He must do something." On being further asked what authority he had to sell, he stated that he was authorized by Stokes to sell the stock ; that he had it in writing, and he then produced the letter which he had received from Stokes from Hot Springs, Va. The trade was finally closed, and it was thereafter discovered that the statement given by Stokes to Polley was not correct ; that there was in the neighborhood of $100,000 in liabilities which were not upon the statement at all and did not appear upon the books ; that the statement was also erroneous in several other respects — the Plant account, representing $332,606.53, and that there was a surplus of $20,000 where there was none in fact. There was evidence to the effect that Stokes knew that these liabilities did not appear upon the statement or upon the books. Platner, the bookkeeper, testified that he told him not to enter them upon the books or put them upon the statement. Indeed, one of them, amounting to upwards of $20,000, was his own ; two notes of $5,000 each were given by himself as president of the corporation ; there was also upwards of $20,000 in unpaid taxes, as well as several thousand dollars for services rendered and materials furnished. According to the statement the total issue of stock was 2,550 shares of the par value of $255,000, which, with liabilities, including the items of surplus and profit and loss shown thereon, aggregated $437,866.12, which was equaled by the assets shown.

That undisclosed liabilities aggregating in the neighborhood of $100,000 materially affected the value of the stock which Polley purchased cannot be seriously questioned. If Polley did not know of these liabilities and the information was kept from him by Stokes, then the jury would have a right to find that the statement which was furnished was a false one ; that it was a material representation upon which Polley relied, and which caused him damage.

But it is suggested that notwithstanding the fact that the statement delivered by Stokes to Polley did not correctly state the assets and liabilities, nevertheless it was a correct statement from the books, and this is what Stokes said it represented. This is undoubt-

edly true, but it was a question for the jury to say, from all the evidence, whether the statement was not intended by Stokes to be understood by Polley as a correct statement, not of the books, but of the assets and liabilities of the Hoffman House, New York. The statement was furnished to enable Polley to determine the value of the stock, and whether he would pay the price which Stokes asked. If it did not correctly show the assets and liabilities, then it is difficult to imagine how it could have been of any aid to Polley or what was the purpose of Stokes in exhibiting it to him, and the same thing can be said as to the statements made by McDonald with reference thereto. Books of account are generally supposed to be kept for the purpose of showing, truly and accurately, the condition of one's business, and if they do not do this they serve no purpose whatever except to mislead. When one is given a statement of assets and liabilities as appears from the books of a business which he contemplates purchasing, he has a right to assume that all the assets and liabilities are on the books, and, therefore, appear upon the statement. If nothing be said to the contrary, he has a right to assume that that is a truthful statement of the affairs of the business, and that the assets and liabilities are correctly set forth.

It is also suggested that though the statements were false, Polley was not misled by them, and in this connection attention is called to the fact that he was treasurer of the corporation. It is true he was treasurer for a short time prior to the purchase of the stock, but there is also evidence to the effect that he had little or no knowledge of the affairs of the corporation; that he had not examined the books, and did not know what was in them. But this was also a question for the jury.

It seems to me, therefore, taking all the evidence together, that there was some evidence to go to the jury on the questions discussed, and for that reason the judgment and order appealed from must be reversed and a new trial ordered, with costs to appellants to abide event.

VAN BRUNT, P. J., PATTERSON and LAUGHLIN, JJ., concurred; INGRAHAM, J., dissented.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.