MARY E. ABERCROMBIE v. JARRETT J. ABERCROMBIE.

No. 11922.   ( 67 Pac. 539. )

SYLLABUS BY THE COURT.

1. JURISDICTION—*Appearance—Divorce and Alimony.*   An appearance in an action for any purpose other than to challenge the jurisdiction of the court is a general appearance for all purposes of the action.   A defendant in an action for divorce, alimony, and custody of children, entering an appearance for the purpose of contesting the right of plaintiff to the custody of the children, enters a general appearance.

2. ———— *Fraudulent Inducement.*   The defendant in an action brought in this state on a judgment rendered in a sister state may defend on the ground that he was induced to submit himself to the jurisdiction of the court of the sister state by fraud on the part of the plaintiff.

Error from Mitchell district court; R. M. PICKLER, judge.   Opinion filed January 11, 1902.   Affirmed.

*Hayden & Hayden, F. J. Knight,* and *Frank A. Lutz,* for plaintiff in error.

*A. G. Mead,* and *Clark A. Smith,* for defendant in error.

The opinion of the court was delivered by

GREENE, J. : The plaintiff and defendant were wife and husband.   They separated and the plaintiff took up her residence in El Paso county, Colorado, where she brought suit for divorce, alimony, custody of their children, and attorney's fees.   While this action was pending, plaintiff commenced an action in Mitchell county, Kansas, for alimony.   She then authorized, in writing, her Colorado attorneys, Messrs Crowell &

McParlin, to make settlement of such litigations. The authority was as follows:

"COMPROMISE.

"*Abercrombie v. Abercrombie.*

"COLORADO SPRINGS, January 1, 1899.

"My attorney is hereby instructed to compromise my case for $1750; and if necessary to effect compromise I will consent to the two boys to be left to the jurisdiction of judge. Girl to come to me, of course. Me to get the bill.

"The difference between $1350 and $1750 is to go to my attorney.

"Should my attorney succeed in getting a larger sum than $1750, two-thirds of such sum is to go to him, the remaining coming to me.

MRS. M. E. ABERCROMBIE."

Mr. J. R. Crowell, of said firm of attorneys, came to Mitchell county with this authority for the purpose of adjusting the differences between plaintiff and defendant. A settlement was agreed upon, the terms of which were as follows:

"Upon the execution of this stipulation, the defendant is to pay the said Crowell & McParlin, for the use and benefit of the plaintiff, the sum of $250, and is to deposit with A. G. Mead, Esq., three promissory notes: One for $400, due in sixty days; one for $400, due in six months, and one for $450, due in one year; to bear interest at the rate of eight per cent. from maturity; $250 cash to be deposited with said A. G. Mead, which, with said promissory notes, is to be delivered to Crowell & McParlin, for the use of the plaintiff, according to instructions in writing accompanying said deposit.

"The plaintiff is to pay all costs of this court, and upon the receipt by A. G. Mead of a certified copy of a decree of divorce rendered in said district court of El Paso county, Colorado, this stipulation is to be filed in the district court of Mitchell county, Kansas,

and judgment is thereupon to be rendered barring each of the parties hereto from all interest in the property of the other.

"The order made by the district court of Mitchell county, Kansas, on the 9th day of January, 1899, is to be deemed satisfied on the payment of said $250.

(Signed)    CROWELL & McPARLIN,

A. G. MEAD, AND

CLARK A. SMITH."

During the time this settlement was being negotiated a question arose about the custody of the two boys.   Mr. Crowell stated that he could not make any definite agreement concerning the custody of the boys, but Mrs. Abercrombie would not make any resistance to Mr. Abercrombie's getting them if she got the girl and alimony ; that some evidence ought to be produced in the court in Colorado which would justify the court in awarding the custody of these boys to the defendant; that under the laws of Colorado divorce cases were tried by jury, but the court, or judge thereof, passed upon the custody of the children ; that these depositions would not be used in the divorce case, but defendant ought to have some one there to introduce these depositions showing Abercrombie's fitness to have the custody of these boys, in case a controversy arose over their custody.   Pursuant to this understanding a stipulation was entered into by which depositions were taken for such purpose.   A part of that stipulation is as follows :

"This stipulation is not to be considered as any appearance by the defendant in the divorce proceedings, but solely as an appearance upon the question of the custody of the minor children.   And it is further understood by the above-named plaintiff and her representative attorneys that John W. Sheafor, of Colorado Springs, is the legally authorized attorney for the

above-named defendant for the purpose of presenting to the court the character of the defendant as to his suitability for having the custody of said minor children, and for no other purpose.''

The defendant, pursuant to said agreement, paid the $250 and executed and deposited the notes. Depositions were taken, which, together with the stipulation, were filed in the office of the clerk of the district court in El Paso county, Colorado, on January 13, 1899. On the 30th day of January, 1899, the plaintiff in error telegraphed to A. G. Mead, at Beloit, Kan., to know how much he could realize on the three notes. In April of the same year, plaintiff notified the defendant's attorney that she repudiated this agreement, and refused thereafter to be bound by it. She also dismissed her action for alimony in the district court of Mitchell county.

On the 8th day of July, 1899, plaintiff, by her attorneys, Messrs. Lunt, Brooks & Wilcox, caused a notice to be served on John W. Sheafor, as follows:

"*To J. W. Sheafor, also known as John W. Sheafor, attorney for the defendant:*

"Take notice that on Monday next, the 10th day of July, A. D. 1899, at two o'clock in the afternoon, at the incoming of court, or as soon thereafter as counsel can be heard, we shall apply to the above-entitled court, at the county court-house, in Colorado Springs, in said county, to then forthwith set down regularly for trial, and to try, hear and determine the above-entitled cause and the issues presented by the plaintiff's complaint herein. When and where you may be present.        LUNT, BROOKS & WILCOX,
*Attorneys for Plaintiff.''*

Mr. Sheafor did not enter an appearance in response to said notice. The Colorado court had no jurisdiction of the defendant, unless it obtained such juris-

diction by reason of the defendant's having filed in said court the stipulation to take depositions, together with the depositions so taken.

On the 10th day of July the cause was called for trial. The court, upon the application of plaintiff, appointed one R. L. Kennedy to appear for the defendant, and Mr. Kennedy duly appeared in pursuance of such appointment. A trial was had and judgment rendered for the plaintiff, granting her a decree of divorce, the care and custody of all the children, $200 annually for each of said children until each arrived at the age of twenty-one years, $2000 for the support and maintenance of plaintiff, $200 attorney's fees, and for costs of action. Plaintiff brought suit on a transcript of that judgment in the district court of Mitchell county, Kansas. The defendant answered, setting up, first, that the judgment rendered against him by the court in Colorado was without jurisdiction, and, second, that his appearance therein, if it should be held that the stipulation to take depositions was an appearance, was obtained by fraud and misrepresentations on the part of plaintiff. Upon the trial judgment was rendered for the defendant below, and the plaintiff prosecutes error to this court.

The three material questions presented are : (1) Did the defendant below submit himself to the jurisdiction of the Colorado court for all purposes of the action by entering his appearance therein and asking the court to award him the custody of the two boys? (2) If he did, was such submission obtained by the false and fraudulent misrepresentations of the plaintiff? (3) Can a defendant in an action brought on a judgment recovered in a sister state, where jurisdiction is obtained by fraud, plead such fraud as a defense in an action brought thereon in Kansas?

3—64 KAN.

The first question must be answered in the affirmative. By this stipulation the defendant appeared in the Colorado court for the purpose of litigating and having determined one of the questions involved in that lawsuit. There is no conflict in the authorities that, where one appears in a case for any purpose other than to challenge the jurisdiction of the court, he submits himself to that jurisdiction for all purposes of the action.

The conduct, however, of the plaintiff in inducing and procuring the defendant to enter his appearance in said court is most reprehensible. The defendant entered into the agreement of settlement in good faith, and, as made, it was within the authority given by the plaintiff. He performed his agreement under the stipulation so far as it was possible, up to the time the plaintiff repudiated it. When he entered into this stipulation it was understood that there was no unsettled question for the determination by the Colorado court except the custody of the boys. She induced him to believe this, and for this purpose, and no other, he was willing to submit himself to the jurisdiction of that court. When this stipulation had been secured and filed in that court, and after she had received a part of the consideration of the agreement, she repudiated the agreement, and then fraudulently used this agreement to obtain a judgment for alimony. We have no hesitancy in saying that the defendant was induced by fraud and misrepresentations to enter such appearance in the Colorado court. It was as much fraud as if she had telegraphed or written him that one of their children was dangerously ill, for the purpose of inducing him to come to the state that she might secure service of summons upon him. Courts will not sanction such conduct nor aid one in securing the fruits of an advantage thus fraudulently obtained.

It is urged by counsel for the plaintiff that by filing the stipulation and depositions in the district court of El Paso county, Colorado, on January 13, 1899, jurisdiction was then given that court over the defendant, and jurisdiction having once attached, no acts of the plaintiff thereafter, however fraudulent, could oust it, and, as she did not repudiate the contract until after that time, it must be held that the jurisdiction was properly obtained. We cannot give our assent to this contention. Where fraud once appears it permeates the entire transaction. A single transaction cannot be fraudulent in one part and innocent in another. A party who seeks to take advantage of a contract or agreement which he fraudulently procured, will not be heard to say that up to a given point he acted in good faith and was innocent—that is, up to a point where the advantages were all on his side—and that a fraudulent intent did not enter his mind until he had arrived at a point in the transaction where it was his duty to perform his part. The law is that one takes nothing from a contract or agreement that he himself has tainted with fraud. The law will operate retrospectively to defeat proceedings fraudulently inaugurated, although done under the color of authority.

The jurisdiction of the Colorado court over the defendant having been obtained fraudulently by the plaintiff, it would be an anomaly in the law for this court to assist her in reaping the fruits of her fraudulent conduct. It has long been a rule of this court that where jurisdiction of a defendant has been obtained by fraud or wrong, he may appear in the action, showing such fraud, and the court will always grant relief. If this is true, can there be any well-defined distinction between permitting him to appear in the original action to show the fraud and in allow-

ing him to set up such fraud in an action brought upon a judgment rendered in a case where jurisdiction of the defendant was obtained by fraud ? Can a valid lawful act be accomplished by an unlawful means ? This court, in the case of *Van Horn Bros. v. Great Western Mfg. Co.*, 37 Kan. 523, 526, 15 Pac. 562, 564, say :

"The only thing necessary to be done in this case is to affirm the judgment of the court below. No comment is really necessary. The plaintiffs, by fraud and deceit, inveigled one of the defendants, John Wilson, into the jurisdiction of the district court of Pawnee county, for the purpose of obtaining service of summons upon him in an action intended to be brought against him and his partner in that county. Such an abuse of judicial process cannot be tolerated in any court of justice."

The principle herein announced was reaffirmed in *The State v. Simmons*, 39 Kan. 262, 18 Pac. 177 ; *The State v. Hall*, 40 Kan. 338, 19 Pac. 918, 10 Am. St. Rep. 200.

The fact that the judgment sued on in this case is the judgment of a sister state can make no difference. It is only when jurisdiction is admitted that full faith and credit should be given to the judgments of a sister state. That the judgment of a sister state may be attacked collaterally, on the ground that jurisdiction was obtained fraudulently, is supported by many authorities. In *Wood v. Wood*, 78 Ky. 624, 627, an action upon a judgment in another state, where jurisdiction had been obtained fraudulently, the court said :

"The judgment having been rendered by an inferior court, presumably without general jurisdiction, will be treated as a foreign judgment. . . . But whether it be treated as a foreign judgment or as the judgment of a court of general jurisdiction ren-

dered in a sister state, and therefore coming within the constitutional provision and the act of congress in regard to the faith and credit to be given such judgments, is immaterial, as it is now held, both by the state and federal courts, that judgments of either character may be collaterally attacked for want of jurisdiction of the subject-matter or of the person, regardless of the recitals in the judgment or record. (Wharton on Conflict of Laws, § 811; *Kerr v. Kerr*, 41 N. Y. 272; *Hoffman v. Hoffman*, 46 id. 30; *Thompson v. Whitmore*, 18 Wall. 457; and *Knowles v. Gaslight and Coke Co.*, 19 Wall. 59.)

"It is now perfectly well settled that the judgment of a court without jurisdiction of both the subject-matter and of the person is absolutely void.   It is, in legal effect, no judgment.   No rights can be acquired under it, and no rights divested by it.   Whenever such a judgment is relied upon for any purpose or in any way, the fact of the existence of jurisdiction may be inquired into.   The only serious question that has arisen of late years upon this matter is as to whether the judgment could be collaterally inquired into as to the jurisdiction of the person when it recites on its face that there was service of process or personal appearance.   But now even that question is practically at rest."

In *Dunlap & Co. v. Cody*, 31 Iowa, 261, 262, 7 Am. Rep. 129, the chief justice said:

"Do the means used to obtain jurisdiction of the person of defendant, in the courts of Illinois, amount to fraud?   It would seem that this question scarcely needs discussion.   Fraud consists in the *suggestio falsi* or the *suppressio veri*.   Both exist here . . .   An enlightened and just administration of the law, no less than sound public morals, condemns such practices, and demands that the client whose cupidity could sanction . . . such a purpose should . . . be disgraced.

"Does the fact that the jurisdiction of the person of the defendant was obtained by fraud constitute a de-

fense to an action upon this judgment? It is the recognized law of this state that, when jurisdiction is properly acquired, fraud in the obtaining of a foreign judgment is a good defense to an action thereon. (*Rogers v. Gwinn*, 21 Iowa, 59, and cases cited.)

"If, then, fraud may be shown to defeat a recovery upon a foreign judgment, when the jurisdiction is undisputed, why should not fraud in obtaining the jurisdiction be followed by like consequences? . . ." (*Ex parte Wilson*, 1 Atk. 152.)

"Referring to these authorities, Shaw, C. J., says: 'These cases, therefore, seem to establish the general principle that a valid and lawful act cannot be accomplished by any unlawful means, and whenever such unlawful means are resorted to, the law will interpose and afford some suitable remedy, according to the nature of the case, to restore the party injured by these unlawful means to his rights.'"

In *Duringer v. Moschino*, 93 Ind. 495, subdivision 1 of the syllabus reads:

"Where, by fraud, one induces another to go to another state, in order to have service of process upon him, the latter can safely ignore the proceedings, and successfully resist a suit upon any judgment thus obtained."

It follows, therefore, that the judgment of the court below is correct, and must be affirmed.

DOSTER, C. J., JOHNSTON, SMITH, JJ., concurring.