MIRIAM PRIME, Appellant, *v.* J. WILLIAM HINTON, Respondent.

First Department, April 12, 1935.

*Thomas J. Minturn* of counsel [*McQuistion & Malcolm*, attorneys], for the appellant.

*Warner Pyne* of counsel [*Monroe J. Cahn* and *Harold M. Miller* with him on the brief; *Emery & Pyne*, attorneys], for the respondent.

MERRELL, J. Plaintiff, the wife of the defendant, brought this action to recover alimony claimed to be due under a final judgment of divorce granted in the State of Nevada in 1931. The defendant contends that the Nevada judgment was obtained by plaintiff

through fraudulent representations which induced the defendant to submit himself to the jurisdiction of the Nevada court. Plaintiff and defendant were married in New York on November 7, 1925. The defendant was a practicing physician. The evidence shows that the parties lived together harmoniously and without any disagreement or trouble until July, 1931. According to the affidavits in opposition to plaintiff's motion for summary judgment it is stated, and is not denied by plaintiff, that plaintiff, on July 3, 1931, told the defendant that she was unhappy and desired a divorce because of the fact that the defendant was so wrapped up in his profession that he neglected her; and that he did not pay her the attention that he should. The defendant was greatly surprised at such statement, and endeavored to dissuade plaintiff from taking steps for a dissolution of their marriage. The defendant particularly inquired of plaintiff, when she thus expressed herself, whether she was interested in or in love with any other man, telling her that if there was any other man involved he would look at the matter quite differently, and that in such a case plaintiff could expect no help or co-operation from him. Plaintiff positively denied the suggestion that she was interested in any other man, and induced the defendant to accede to her wishes. The proofs clearly show that at that time and for some time prior thereto plaintiff had been engaged in adulterous relations with a man by the name of William Truesdell, and had accepted expensive gifts from Truesdell, and had been guilty of improper conduct with him on many occasions. Relying on the truth of plaintiff's protestations that she was not interested in any one else, the defendant, on August 6, 1931, entered into a formal separation agreement, a copy of which is annexed to the complaint as Exhibit B. Immediately thereafter plaintiff went to Reno, Nev., where she sojourned for six weeks, and then brought action in that State for divorce, and on September 29, 1931, fifty-four days after the making of the separation agreement, plaintiff obtained a decree of divorce in the Nevada court. Relying on plaintiff's assertion that she was interested in no one else, and in entire ignorance of her relations with Truesdell, the defendant, at the request of plaintiff, was induced to and did appear in the Nevada action by attorney, thus conferring jurisdiction which otherwise could not have been obtained. No defense was interposed by the defendant in the Nevada action. Thereafter and until June, 1933, the defendant paid the alimony provided in the separation agreement. In June, 1933, the defendant learned of the falsity of plaintiff's representations whereby he had been induced to appear in the Nevada divorce action, and at once ceased making any further payments of alimony. There is no denial on

the part of the plaintiff as to her representations made to defendant
to induce him to appear in the Nevada divorce action. Indeed, the
affidavit of Dr. Jerome Selinger, who was present at one of the
conversations wherein plaintiff protested her innocence of any
impropriety, clearly corroborates the affidavit of the defendant as
to the false representations made. A large number of affidavits
were produced by defendant in opposition to plaintiff's motion for
summary judgment. These affidavits were from eyewitnesses who
described many displays of affection and many instances showing
an opportunity for the gratification of a lecherous desire on the part
of the plaintiff. It appeared that plaintiff and Truesdell occupied
adjoining rooms in the Arundel plantation at Georgetown, S. C.,
where the plaintiff was sojourning; that they met alone frequently,
and were in each other's company evenings and until late hours of
the following mornings. In one of these affidavits, that of Jannett
Lord Tucker, who accompanied plaintiff to the Arundel plantation
at Georgetown, S. C., in January, 1931, the affiant made oath of
having seen plaintiff and Truesdell embrace and kiss each other.
She stated that, after Truesdell arrived at the plantation, he and
the plaintiff spent the evenings together, remaining up together
until the early morning hours; that plaintiff and the affiant occupied
the same room during their stay at the plantation, and that plaintiff
awakened the affiant when she came into their room to go to bed,
and that when she did return in the early morning from being in
Truesdell's company, she was in a nervous and disheveled condition;
that on one such occasion she stated to affiant that she desired to
commit an indiscretion with Mr. Truesdell, as the temptation was
very great in that she could not become pregnant and there was no
risk. The affiant states in her affidavit that she remonstrated
with plaintiff at length, saying that she would make a terrible mis-
take to do such a thing and that it might result in ruining her life;
and that, though plaintiff then said she agreed with affiant, she
remained up with Truesdell the next two nights until three or four
o'clock of the following mornings. These affidavits in opposition
leave no doubt in my mind that defendant will be able to show at
the trial that the Nevada divorce was procured by fraud and mis-
representation, and that the plaintiff was a very bad woman; that
only through such fraud was jurisdiction conferred upon the
Nevada court.

Jurisdiction over the defendant having been procured through
fraudulent representations, which induced defendant to appear in
the Nevada action by attorney, the judgment of the Nevada court
may be attacked collaterally. A judgment fraudulently obtained
is not entitled to protection under the full faith and credit clause

of the Federal Constitution. (*Dobson* v. *Pearce*, 12 N. Y. 156; *Andrews* v. *Andrews*, 188 U. S. 14; *Hunt* v. *Hunt*, 72 N. Y. 217, 225; *Gray* v. *Richmond Bicycle Co.*, 167 id. 348, 355.) In *Gray* v. *Richmond Bicycle Co.* (*supra*) the court said (at p. 355): " Both parties concede that a judgment recovered in a sister State through the fraud of one party *in procuring the appearance of another*, is not binding on the latter when an attempt is made to enforce such judgment in this State." (Italics are the writer's.) When jurisdiction is acquired as the result of a fraudulently induced appearance, a judgment based thereon is fraudulently procured and may be attacked collaterally. (*Greenbaum* v. *Greenbaum*, 147 Misc. 411; affd., 239 App. Div. 912; *Abercrombie* v. *Abercrombie*, 64 Kan. 29; 67 P. 539; *Gray* v. *Richmond Bicycle Co.*, 167 N. Y. 348, 355.) Beyond any dispute, the appearance by the defendant by attorney in plaintiff's action brought in the State of Nevada conferred jurisdiction upon the Nevada court. Without such appearance the judgment obtained by plaintiff would have been of no force or effect in the State of New York. (*Cross* v. *Cross*, 108 N. Y. 628; *Baylis* v. *Baylis*, 207 id. 446; *Matter of Haffner*, 254 id. 238, 240.) In *Greenbaum* v. *Greenbaum* (147 Misc. 411; affd. by this court, 239 App. Div. 912) the plaintiff brought an action for separation and a decree invalidating a prior Nevada divorce obtained by defendant. In that case plaintiff had been induced to appear in the Nevada action by false and misleading statements. In the *Greenbaum* case the court said: " Where, as here, there is a claim that the plaintiff was induced by fraud to appear in an action brought against her in another State in which she was not domiciled, a decree so obtained may be collaterally attacked and challenged in the matrimonial domicile of the parties. (*Andrews* v. *Andrews*, 188 U. S. 14.)"

The case of *Abercrombie* v. *Abercrombie* (64 Kan. 29; 67 P. 539) is directly in point. In that case the opinion of the court stated: " The conduct, however, of the plaintiff in inducing and procuring the defendant to enter his appearance in said court is most reprehensible. The defendant entered into the agreement of settlement in good faith, and, as made, it was within the authority given by the plaintiff. * * * She induced him to believe this, and for this purpose, and no other, he was willing to submit himself to the jurisdiction of that court. * * * We have no hesitancy in saying that the defendant was induced by fraud and misrepresentations to enter such appearance in the Colorado court. It was as much fraud as if she had telegraphed or written him that one of their children was dangerously ill, for the purpose of inducing him to come to the state that she might secure service of summons upon

him.   Courts will not sanction such conduct nor aid one in securing the fruits of an advantage thus fraudulently obtained.   *   *   *

" It has long been a rule of this court that where jurisdiction of a defendant has been obtained by fraud or wrong, he may appear in the action, showing such fraud, and the court will always grant relief.   If this is true, can there be any well-defined distinction between permitting him to appear in the original action to show the fraud and in allowing him to set up such fraud in an action brought upon a judgment rendered in a case where jurisdiction of the defendant was obtained by fraud?   Can a valid lawful act be accomplished by an unlawful means?   *   *   *

" The fact that the judgment sued on in this case is the judgment of a sister state can make no difference.   It is only when jurisdiction is admitted that full faith and credit should be given to the judgments of a sister state.   That the judgment of a sister state may be attacked collaterally, on the ground that jurisdiction was obtained fraudulently, is supported by many authorities."

The respondent is not estopped from attacking the Nevada judgment, for, as was said by the trial court in *Greenbaum* v. *Greenbaum* (147 Misc. 411, 413): "Appearance by the plaintiff in the Nevada action does not estop her from challenging in this jurisdiction the decree of that State, for it is only the spouse who invokes the legal machinery of the foreign court which results in the decree under attack who may not subsequently be heard to question the validity of such foreign decree."

In *Gray* v. *Richmond Bicycle Co.* (167 N. Y. 348) Judge VANN, writing for the Court of Appeals, said (at p. 355): " The defendant expressly admits that ' even a foreign judgment may be successfully assailed for fraud in its procurement.'   *   *   *   It was not necessary for the plaintiff to go into the State of Indiana and obtain relief from the judgment through its courts, for, as we have held, ' a court of one State may, where it has jurisdiction of the parties, determine the question whether a judgment between them, rendered in another State was obtained by fraud, and, if so, may enjoin the enforcement of it, although its subject-matter is situated in such other State.' "

It clearly appears, from the affidavits upon which plaintiff's motion for summary judgment was heard, that the respondent was induced to appear in the Nevada action as the result of the fraud perpetrated upon him by plaintiff.   There is no doubt that such appearance was the direct and proximate result of the plaintiff's fraudulent statements.   Without the defendant's appearance, the purpose of the plaintiff could not have been accomplished. Had plaintiff disclosed the true facts, certainly the defendant

never would have consented to confer jurisdiction on the Nevada court, nor assented to any of the steps in plaintiff's deliberate plan. The fraudulent conduct of the plaintiff should set a court of equity in motion to undo the wrongs committed against the defendant. Mr. Justice BLANCHARD in *Ducas* v. *Guggenheimer* (90 Misc. 191; affd. by this court, 173 App. Div. 884) quoted with approval from Story on Equity Jurisprudence (§§ 217, 218) as follows: " By far the most comprehensive class of cases of undue concealment arises from some peculiar relation or fiduciary character between the parties. Among this class of cases are to be found those which arise from the relation of * * * husband and wife. * * * In these and the like cases the law * * * requires the utmost degree of good faith (*uberrima fides*) in all transactions between the parties. If there is *any* misrepresentation, or any concealment of a material fact, or any just suspicion of artifice or undue influence, courts of equity will interpose and pronounce the transaction void, and as far as possible restore the parties to their original rights." (Italics are the writer's.)

It thus appears that every necessary element of a defense of fraud is present in the case at bar.

The brief of the appellant overlooks the fact that the defense to the complaint is primarily based upon the fraudulently induced appearance of the defendant in the Nevada action. The appellant erroneously assumes that the defense herein is based solely upon the deprivation of the opportunity to interpose a *known* defense in the Nevada action. The fact of the matter is, the defendant knew of no defense to the Nevada action. The existence of such defense was fraudulently concealed from defendant. Had he known the facts he certainly would not have appeared in the Nevada action, and would have defended the same. Having induced an appearance by defendant, through fraudulent representations made by plaintiff, such fraud vitiated the result flowing from said action. In none of the authorities cited by appellant was the essential question of jurisdiction involved. Indeed, the cases cited by appellant recognize that the fraudulent deprivation of an opportunity to interpose a defense is a proper basis for a collateral attack up to the time such defense was unknown to defendant, or could not have been ascertained by reasonable diligence. *Gardiner* v. *Van Alstyne* (22 App. Div. 579), relied upon by appellant, expressly holds: " The fraud for which a judgment will be set aside is one in the concoction of the judgment." In that case the court pointed out that the pleadings in the original action, filed by plaintiff who sought to set aside the judgment, showed knowledge of the alleged fraud at and prior to the original trial, and that without " great diligence in

preparing for trial " the plaintiff could have ascertained and shown the facts in the original suit. In the case at bar the defendant was entirely ignorant of the true facts until nearly two years after his appearance in the Nevada action and the rendition of the judgment of divorce by the Nevada court. In *Ross* v. *Wood* (70 N. Y. 8) it is said (at pp. 10 and 12): " The rule as stated by Ch. KENT in *Foster* v. *Wood* (6 J. C. R. 87), is that chancery will not relieve against a judgment at law on the ground of its being contrary to equity, unless the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not have been received as a defense, or unless he was prevented from availing himself of the defense by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part. * * *

" There was no suppression of evidence by the plaintiff in the former action, or ignorance on the part of the present plaintiff of any fact material to the controversy, and all the evidence which is now within his reach was produced or might have been produced on that trial, and was equally competent then as now."

I think the affidavits in this case clearly show a *bona fide* issue of fact which can only be disposed of at the trial.

The court at Special Term properly denied plaintiff's motion for summary judgment, and the order appealed from should be affirmed, with twenty dollars costs and disbursements to defendant, respondent, against plaintiff, appellant.

MARTIN, P. J., McAVOY, O'MALLEY and UNTERMYER, JJ., concur.

Order affirmed, with twenty dollars costs and disbursements to the respondent.