Owen McGivern, J.
This is a proceeding for the judicial settlement of the final account of the committee of the estate of a deceased incompetent, and for the fixation of legal fees. The executor of the deceased incompetent has filed certain objections and has cross-moved for relief in the nature of a surcharge against one of the cocommittee and for a direction that the other cocommittee account for moneys allegedly belonging to the estate received by the cocommittee both prior and subsequent to Ms appointment, and for other relief including the appointment of a referee.
The cross motion was granted to the extent of directing Gustave Nast, the cocommittee, to file an account of his acts from August 3, 1950 to March 1, 1954.
The incompetent, Fischel Friedman was, by order of tMs court declared such on April 28, 1949. Martha Friedman Nast, a sister was appointed committee of Ms person and property. She was also appointed guardian as a result of ancillary proceedings in the Superior Court of the State of New Jersey, Chancery Division, Hudson County, where the incompetent was possessed of property; and by an order of this court she was permitted to move the incompetent and certain assets to California, where she resided with her husband, Gustave Nast.
On August 3, 1950, Martha F. Nast, the committee, died, a resident of California. The incompetent was in California, as were certain assets of Ms estate, which were in part transferred from Ms assets in New York and New Jersey.
On August 25, 1950 Gustave Nast was appointed guardian of the person and property of the incompetent by an order of the Superior Court of the State of California, Los Angeles County. In his petition, Gustave Nast alleged that the incompetent was a resident of Los Angeles County and was then a patient at the Baldy View Samtarium, San Gabriel. He also stated that Martha Nast had been the committee of the incompetent by appointments in the courts of New York and New Jersey, and that at the time of her death, as such guardian, she had in her possession personal property valued at $11,985.01. It appears that Gustave Nast, believing the incompetent to be a resident of California, petitioned for his appointment under section 1461 of the California Probate Code. Under this section, notice is reqmred to be given only to the relatives of the incompetent within the second degree, residing in California.
But, it is conceded that the incompetent was not a resident of California at such time, and the law is clear that a committee may not change the residence of an incompetent. The objecting party thus concludes that the order of the California court *136 appointing Gustave Nast as guardian was void and subject to collateral attack, and further asserts that all of Nast’s acts under the order are void.
Acting pursuant to the California court order, however, Gustave Nast took possession of the incompetent’s assets in California and obtained possession of the income from the real estate in New Jersey, albeit he did not qualify in New Jersey until 1955.
Thereafter, Gustave Nast brought a proceeding in this court for the judicial settlement of the account of his wife, Martha Nast, as deceased committee, and for the appointment of a successor committee. In this proceeding Nast disclosed that he had been appointed guardian of the incompetent in California. Objections were filed by attorneys for various next of kin; the claim was made that Gustave Nast made an unlawful attempt to change the incompetent’s residence to California; objection was made to the appointment of Gustave Nast as successor committee; a request was made for a reference, and a special guardian was appointed.
Mr. Justice Di Falco, by his decision, dated February 11, 1954, appointed Gustave Nast and Gordon I. Novod, Esq. as cocommittee. This decision referred to Nast’s appointment as guardian in the California court and declared him to be a proper person, best qualified under the circumstances, to act as cocommittee, and accordingly, the request for a reference was denied. An order was signed on March 2, 1954, appointing the cocommittee and settling the account. Both cocommittee thereafter qualified.
At that time, some of the incompetent’s assets were in New York, some in New Jersey and some in California, under the sole control of Nast, who continued as guardian of the person and property of the incompetent in California.
By order to show cause dated April 20, 1954 Novod, the cocommittee, moved to amend the order appointing Nast, asserting that Nast had procured orders in the California court allowing bim $3,800 for his alleged services to the incompetent, and also an order for the purchase of a 1950 Oldsmobile, and which had not been disclosed by Nast prior to his appointment as committee. The application was denied by Mr. Justice Di Falco who indicated that Nast’s acts could be adequately reviewed upon a subsequent final or intermediate accounting.
After much delay, apparently occasioned by Nast’s failure to cooperate, in a New Jersey ancillary proceeding’, Nast and Novod were appointed successor guardians in the Superior Court of that State, where property of the incompetent remained *137 in the name of the deceased committee. In addition, Novod made many demands on Nast with respect to the assets in California, but without success. However, Novod succeeded in cutting off payments from the New Jersey property which had been going to Nast in California, and thus money came into Novod’s hands as cocommittee.
On October 3, 1955 the incompetent died in California. One Joseph Horowitz was appointed executor of the incompetent’s estate by order of the Surrogate’s Court, New York County, and as executor he has filed objections to the account.
Principally, it is urged that California had no jurisdiction to appoint Nast, that such appointment was invalid and this court is entitled to inquire de novo into Nast’s acts; each item of disbursement in Nast’s account is objected to on the ground that no proof of payment is offered, or of reasonableness and necessity; the purchase of the Oldsmobile hereinbefore referred to is questioned, as well as payments to Nast for trips to the incompetent’s sanitarium, clothing purchases and incidentals; payments for accounting expenses and for compensation to himself are also objected to by the executor.
Objection is made to Novod’s account for allegedly failing to account for all of the original assets; to the inclusion of commissions on the gross rents collected, on the ground that management was in the complete control of an agent; to certain disbursements set forth in Schedule 0-4 of the account; to the payment of a fee to Novod; to the payment of a fee set forth in Schedule 0-1.
It is contended by the cocommittee that this court does not have the power in this proceeding to make a determination with respect to the acts of Nast which preceded his appointment as cocommittee herein, and which period antedates the period covered by this account.
As to the objections to Novod’s account: the assets on hand, as of the date of the order settling the account of Martha Nast, have been examined by the court. Such cash as was in the Hudson County Savings Bank has been satisfactorily accounted for.
As to the balance in the Security Mutual Bank, Glendale, California, this never came into Novod’s possession. Nast had taken possession of this, pursuant to his appointment as guardian by the California court; the same applies to the balance due on the promissory note and the cash in the safe-deposit box. It appears that Novod reasonably exhausted every feasible means to acquire possession of these assets, and his failure to accomplish such purpose cannot be regarded as negligent or *138 willful, and accordingly this objection is overruled. The real property in New Jersey was valued at $20,000 in 1954 and is now valued at $13,500, reflecting a paper loss to which no culpability may attach. Hence, the objection as to the failure to include all the assets as of the date of death of Martha Nast is overruled.
Objection No. 5 is sustained. It appears that J. I. Kislak Corporation in Jersey City has been completely managing this property, and receiving commissions for such services. Subdivision 9 of section 285 of the Surrogate’s Court Act, provides for additional commissions where the guardian is entitled, or required to collect the rents of and manage the real property. Since the cocommittee did not manage the property, additional commissions on rent collected are disallowed.
Further, it appears that the annual accounts filed by the committee indicate that receiving commissions were also taken on principal. This should not have been done. Commissions on receiving and paying out on principal are allowed only in the instance of an intermediate or final account. On the annual account, filed on February 1,1955, commissions were taken, and on the annual account filed on January 12, 1956, commissions were taken; in the aggregate, the committee took and received commissions aggregating $919.64. The committee now requests the balance of its commissions. Without breaking down the commissions due on the annual accountings, the court has recomputed the commissions due to the cocommittee.
Schedule A of the final account shows total receipts ofprincipal in the sum of $36,602.92, which includes the assessed value of the improved property at 108 W. 4th Street, Bayonne, New Jersey, in the sum of $13,500 and two vacant unimproved lots in Bronx County assessed at a total of $950. A committee of an incompetent neither “ receives,” “ distributes ” nor “ delivers ” the real property of an incompetent within the meaning of subdivision 5 of section 285 of the Surrogate’s Court Act, which by section 1376 of the Civil Practice Act, is made the measure of the compensation of a committee. He is a mere custodian and conservator of the real property, legal title to which remains in the incompetent. No commissions are allowable to the committee on real estate belonging to the incompetent. (Matter of Merritt, 278 N. Y. 74.) And commissions on the value of real property are not allowed on the theory of equitable conversion. (Matter of Salomon, 252 N. Y. 381.) Accordingly, the cocommittee are entitled to commissions on the total amount set forth in Schedule A, less the sum of $14,450, the aggregate *139 assessed value of the improved and unimproved real property. This leaves a balance of $22,152.92 principal received. Commissions for paying and receiving principal at the statutory rate now in existence are computed in the sum of $703.82.
Interest from government bonds and savings bank totals $236.53. Rents and $5.20 court costs collected were in the sum of $8,603.46, or a total amount of income collected in the sum of $8,839.99. Commissions on the latter sum for receiving and paying are computed at the previous statutory rate in the sum of $271. Total commissions on principal and income amount to $974.82. As above set forth, the cocommittee have received $919.64 by way of annual commissions and are therefore entitled to the balance of commissions as above computed in the sum of $55.18. The application for the commissions requested in the final account is denied.
Objection No. 6 as to payments made to Kislak are overruled. These payments were necessary in the management of the New Jersey property.
Objection No. 8 concerning a request for a fee of $500 to New Jersey counsel for services rendered in ancillary proceedings in New Jersey is modified. The services performed were necessary. The fee however will be fixed in the sum of $250.
Objection No. 7 will be passed upon in a later part of this decision.
The residence of the incompetent remained in New York, and New York had jurisdiction over his person and property located here. As to property of the incompetent located in New Jersey and California, only the courts of those States had jurisdiction with respect thereto.
We now turn to the contentions of the executor that the appointment of Nast as guardian in California was void and not binding on this court.
There is no question that only California had jurisdiction over the property of the incompetent situated in California. (Hoyt v. Sprague, 103 U. S. 613, 631; 3 Beale on Conflict of Laws, § 583A. 1, pp. 1591-1592; see, also, Matter of Perillo, 173 Misc. 21; Matter of Van Dyke, 33 N. Y. S. 2d 776, 778.) And at the time of Martha Nast’s death, the incompetent was present in California and had assets of about $12,000 there. When Gustave Nast asserted in his petition that the incompetent was a resident of California it was not necessarily a willfully false statement. His legal conclusion was erroneous, since the incompetent’s residence remained that of New York, and his mere presence in California did not alter his residence.
*140 Gustave Nast had advised the California court that his deceased wife had been the committee of the incompetent both in New York and in New Jersey as ancillary committee.
Under section 1 of article IV of the Constitution of the United States, full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State.
It is undoubtedly true that a judgment which is fraudulently obtained or which was obtained without jurisdiction is not entitled to full faith and credit. The fraud in such a case must be of a vital or substantial nature (Gray v. Richmond Bicycle Co., 167 N. Y. 348; Prime v. Hinton, 244 App. Div. 181; Cohen v. Randall, 137 P. 2d 441).
The mere allegation in Nast’s petition that the incompetent was a resident of California did not vest the California court with jurisdiction but the incompetent’s assets there and his physical presence there did give the court colorable jurisdiction.
No case has. been cited by the objectant holding that failure to give notice of the application for the appointment of a guardian pursuant to section 1570 of the California Probate Code renders void an order directing such appointment; and strict compliance with section 1461 of the California Probate Code is not jurisdictional, except concerning notice to a supposedly insane or incompetent person (cf. Guardianship of Peterson, 84 Cal. App. 2d 541). And the same case held that jurisdiction was properly obtained even though a close relative had not been served. Section 1570 of the Probate Code does not direct service of the petition upon relatives of the incompetent but only to such person or persons as the court or judge deems proper in such manner as deemed reasonable.
It is noteworthy that section 1570 does not adjudicate the incompetency of a person but merely achieves the appointment of a guardian, and it is held that the failure to proceed under section 1570 of the Probate Code and to give the notice required thereunder, was a mere procedural error, not resulting in the loss of jurisdiction. Accordingly, the proceeding by Gustave Nast under section 1461 of the Probate Code was not a fraud on the court.
The attack upon the California order appointing Nast as guardian is a collateral attack and the burden is upon objectant to show actual fraud (cf. Swidler v. Knocklong Corp., 305 N. Y. 527, cert. denied 347 U. S. 917, and cases cited therein). In this connection, the objectant failed to show any act of fraud by Gustave Nast.
*141 Thus, the objection as to the jurisdiction of the California court is overruled, and under the full faith and credit clause, the appointment under consideration is binding on this court.
By intermediate order of this court, Gustave Nast was directed to file an account for his acts from the date of his appointment as guardian in California, namely, August 25,1950, to the date of his final discharge in California. However, this court has no power to pass upon the acts of Gustave Nast prior to his appointment as cocommittee in New York. (Matter of Mannerheim, 175 Misc. 126; Civ. Prac. Act, art. 81, §§ 1356, 1357, 1358, 1377.)
Objections 1, 2 and 3 in the objections verified February 12, 1957, insofar as they relate to the period prior to the date of Nast’s appointment in New York as cocommittee, namely, March 2,1954, are overruled.
The account is settled and allowed. Gordon I. Novod is allowed a fee for legal services in the sum of $1,500. No fee is allowed to the attorney for Gustave Nast. The account should have been filed by both cocommittee instead of in two separate parts. The cross motion is denied. Settle order.