HILDA M. CARDY, Respondent, *v.* VERNON G. CARDY, Appellant.

First Department, May 4, 1965.

*Lester Kissel* of counsel (*Arthur Brooks* and *Henry V. Kensing* with him on the brief; *Meyer, Kissel, Matz & Seward,* attorneys), for appellant.

*Edmund C. Burke* of counsel (*Maxwell & Burke,* attorneys), for respondent.

STALEY, JR., J. This is an appeal from an order dismissing defendant's first affirmative defense of *res judicata* and his second affirmative defense of Statute of Limitations upon the merits after a trial of those issues before the court below.

The plaintiff and defendant were married in the Province of Ontario on April 29, 1916 and their marriage was dissolved by an act of Parliament passed on May 9, 1950 and assented to by the Governor General of Canada on June 1, 1950. Subsequent to the divorce, on June 2, 1950, pending litigation that had been instituted by the plaintiff for separation and for dissolution of community of property was settled and the plaintiff renounced any claim to community of property, and the defendant contracted to pay and is paying her $1,400 per month for her support and secured said monthly payments by establishing a trust for the plaintiff's benefit in the sum of $450,000.

In 1955 plaintiff commenced this action to recover damages for fraud in inducing her to enter into the contract of settlement on June 2, 1950 after she allegedly discovered that defendant had misrepresented the value of the total community property that existed at the time they entered into the contract. Plaintiff alleges that she became a resident of New York in 1952 and later a citizen of the United States. Plaintiff served process on the defendant, a citizen and resident of Canada in New York State when he was temporarily in the State. The defendant moved to dismiss the complaint on the grounds of legal insufficiency; lack of jurisdiction of the subject of the action; *forum non conveniens*; *res judicata* and Statute of Limitations under the law of the Province of Quebec.

The Special Term denied the motion in all respects, which order was affirmed by this court, with two Justices dissenting, and by the Court of Appeals. (*Cardy* v. *Cardy*, 7 A D 2d 721, affd. 6 N Y 2d 943.) After service of the answer, the defendant made a motion for a separate prior trial of the issues of *res judicata* and Statute of Limitations raised by his affirmative defenses based on the application of Quebec law, which motion was granted by this court. (14 A D 2d 735.)

It is contended by the defendant that the execution of the agreement on June 2, 1950 resulted in a " transaction " under the Civil Code of the Province of Quebec.

Articles 1918 to 1920 of the Civil Code provide as follows:

" 1918. Transaction is a contract by which the parties terminate a lawsuit already begun, or prevent future litigation by means of concessions or reservations made by one or both of them.

"1919. Those persons only can enter into the contract of transaction who have legal capacity to dispose of the things which are the object of it.

"1920. Transaction has between the parties to it the authority of a final judgment (*res judicata*)."

The main issue tried by the court below was whether or not the transaction herein sustains the defense of *res judicata* so that plaintiff is prohibited from collaterally attacking the transaction in a suit for damages for fraud. Both parties presented expert testimony as to the controlling law of Quebec on this issue.

The defendant's expert was an attorney admitted to the Quebec Bar in January, 1930. He held a Bachelor of Law degree from Dalhousie University in Halifax, and a Master of Laws degree from Harvard Law School. He had practiced law continuously in the Province of Quebec from January, 1930 until the present time, with the exception of three years when he was a Judge of the Superior Court of the Province of Quebec from November, 1946 until July, 1949. He unequivocally stated that the agreement of June 2, 1950 was a transaction within the meaning of the Civil Code; that there were reciprocal concessions given by the parties; and that in any event reciprocal concessions were unnecessary. He testified that the transaction is the equivalent of a final judgment of a court and is *res judicata*; that the transaction having the same quality as a judgment could not be collaterally attacked and until it is set aside by direct action subsists for all purposes and entirely precludes this action against the defendant.

The plaintiff presented the testimony of two expert witnesses, the first of whom was a professor of law at McGill University and a well-known teacher and lecturer of Quebec law. He stated that in an action for fraud the party defrauded is not limited to the sole and exclusive remedy of rescission but may institute an action for indemnity; that a person electing to sue for damages could continue to receive benefits under the contract but must act as soon as he had knowledge of the fraud itself. He further testified that the agreement on June 2, 1950 terminated a pending lawsuit and was, therefore, a transaction; that a final judgment entered by a court could only be attacked by direct attack as provided by article 1177 of the Civil Code of Quebec. Nevertheless he testified that an action for damages grounded on fraud was a direct attack on the transaction.

The second expert witness of the plaintiff testified that a transaction was in effect a contract and a party to a contract in

a suit for fraud was not limited to the sole remedy of rescission but could either rescind or sue for damages only.

The learned trial court found "neither side could find any Quebec case directly in point" and concluded "in view * * * of the absence of direct Quebec authority the resolution of these issues requires an analysis of the various code provisions and decisions dealing with such matters as marriage status, community of property, transaction, and fraud, in an endeavor to ascertain the essence and spirit of Quebec law and apply it to the issues here presented". Thus the judgment below is grounded on the trial court's original adjudication of Quebec law on the legal effect of a transaction.

We find the Quebec statute, article 1920 of the Civil Code, the Quebec adjudications, and the commentaries thereon preclude this action.

It is undisputed that the settlement made on June 2, 1950 was a transaction. The Civil Code of Quebec explicitly provides it has the quality of a final judgment (Civil Code of Quebec, art. 1920).

In the case of *Hardy* v. *Filiatrault* (17 Can. S. C. R. 292), the Supreme Court of Canada in referring to articles 1918, 1920 and 1921 of the Quebec Civil Code stated as follows: "As one can see, transaction has at the same time the character and authority of an agreement and the force of a judgment. There cannot therefore be risen any question, even a question of law, which could have for effect to attack the present transaction. It has the effect of a court of last resort."

In the case of *Watson* v. *O'Shea* (34 Qué K. B. 236), a personal injury action was settled by means of a transaction. The plaintiff thereafter instituted an action claiming the same damages as in the original suit and the defendant pleaded the transaction as an absolute defense. The plaintiff then alleged that the transaction had been obtained through fraudulent means. The plaintiff obtained a judgment which on appeal was reversed, the appellate court stating as follows (as translated by Judge CAMPBELL, defendant's expert): "The settlement made with the tutor terminated any recourse against the appellant because of the accident. He could not be sued without setting aside the settlement, without demanding the annulment thereof."

"Transaction" was the subject of a law lecture given at the University of Montreal by the late Mr. Justice PHILLIPPE DEMERS who had been a Supreme Court Judge for 43 years and the Dean of the University of Montreal for more than 20 years on which subject he stated as follows:

"Law-suits, poison our lives with a multitude of torments; often, they are the ruin of families. The transaction which terminates them is the better part of wisdom. One does not lose in transacting, because whatever sacrifice one may accept, he gains in return the most valuable of all assets, tranquility; 'melior est certa quam sperata victoria'; 'Many remain beggarly after twenty legal victories. (Boileau) '

"This is the reason why the transaction has always been favourably considered; so favourably, indeed, that it is recognized by law to possess an authority, which must be respected as much as that of a judgment.''

Likewise the law of Louisiana, which has a Civil Code provision on transactions similar to the Quebec Civil Code and which law the experts agreed is the same as Quebec law, holds that a direct attack by annulment against a transaction is necessary and that a collateral attack by an action for damages cannot be made. (*Chapin* v. *Federal Transp. Co.*, 70 So. 2d 189 [La.]; *Wholesale Distr. Co.* v. *Warren*, 84 So. 2d 250 [La.]; *Oglesby* v. *Attrill*, 105 U. S. 605.)

In *Oglesby* v. *Attrill* (*supra*, pp. 610–611) the Supreme Court reviewed the effect of a compromise under the Code of Louisiana and stated as follows: '' A compromise, by the code of Louisiana, is defined to be ' an agreement between two or more persons, who, for promoting or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which any one of them prefers to the hope of gaining balanced by the danger of losing ' (art. 3071); and has, between the interested parties, a force equal to the authority of a thing adjudged. It cannot be attacked on account of any error in law or any lesion. Art. 3075. * * * The compromise stands, therefore, as a judgment, making a settlement of the very matters now set up as grounds of complaint in the petition. * * * No allegations of fraud, in addition to those made at the settlement, can prevent the compromise from having effect as a judgment thereon. It may, indeed, by a direct proceeding instituted for that purpose, be rescinded for fraud, but it cannot, any more than any other judgment, be attacked collaterally. *Adle* v. *Purdhomme*, 16 La. Ann. 343.''

The experts, plaintiff's and defendant's, agree that Quebec law (Code Civ. Pro., art. 1177) provides for revocation of a judgment on various grounds, including fraud, and that revocation is necessary to enable resort to the claims thereby adjudicated. Quebec law does not enable a collateral action for fraud so long as the judgment persists. Plaintiff, however, argues a transaction is not a judgment within the meaning of

article 1177. This argument rests on adjudications pertaining to simple contracts. In the light of *Hardy, Watson* and *Oglesby* (*supra*), we conclude that under Quebec law the transaction herein has the attributes of a judgment, and until it is revoked precludes this action. ·

The judgment appealed from should be reversed, on the law and on the facts, and the motion to dismiss the second amended complaint granted, without costs and disbursements.

McNALLY and STEVENS, JJ. (concurring). We concur in the dismissal of the complaint for the reasons stated in the opinion of Mr. Justice STALEY and for the additional reasons advanced in the dissent in *Cardy* v. *Cardy* (7 A D 2d 721).

BREITEL, J. P. (dissenting). The merits of plaintiff's case are yet to be reached. The present appeal is concerned only with the defense of *res judicata* based on a Quebec judgment in the nature of a transaction settling a prior separation and community property litigation in Quebec between plaintiff wife and defendant husband.

The present action is for damages for fraud allegedly committed by the husband in obtaining the wife's agreement to the Quebec transaction, and, for the purposes of this appeal and the present defense, assumed to have occurred. Plaintiff is not seeking to set aside the transaction or the periodic payments she receives under it. She dare not, she says, because then she would be left destitute. Instead of wishing to set aside the transaction, she seeks damages for the fraud by way of inducement extrinsic to the transaction which brought it about. It is important to keep this distinction in mind.

Despite the unfamiliar terminology, a transaction in the civil law has its analogue in American common-law jurisprudence. It is a consent or compromise judgment entered on a settlement between the parties. It is not a judgment on the merits after the litigation of issues of fact and law. Under Quebec law it concededly has the effect of a judgment (Civil Code, art. 1920). It also, under Quebec law, may be set aside, annulled, or rescinded on the same grounds as a contract, errors of law excepted (Civil Code, art. 1921). These rules neither create issues nor provide the answer to any issue in this case.

In determining whether the Quebec judgment is *res judicata* of any of the issues of fact necessarily raised in the present action for fraud, there are two principal questions. The first is whether under the law of Quebec, where the fraud occurred, an action lies for damages for the fraudulent procurement of a judgment without setting aside the judgment; and the second is

whether the Quebec judgment must, even though obtained by fraud, be given full faith and credit under principles of comity applicable to extranational judgments. In determining these issues there are secondary questions as to how Quebec law would treat its own transaction judgment since there is no dispute that, under familiar principles, the courts of this State would not accord to any foreign judgment any higher dignity or effect or imperviousness to change or attack than does the law of the rendering State.

The late Mr. Justice GREENBERG who determined the present issues at nisi prius wrote an elaborated opinion in which it is made evident that the Quebec law as expressed in the statutes of that province and as decided in the handful of available judicial cases leaves quite unclear whether a transaction judgment arising in a matrimonial milieu precludes an independent action for damages for fraud as distinguished from a direct attack in the proceeding in which the transaction judgment was rendered. Equally unclear is the issue whether in Quebec there exists an analogue to the common-law election of remedies doctrine pertaining to acts or judgments fraudulently obtained and whether it is unnecessary to have rescission before damages may be recovered or whether damages may still be recovered without upsetting the fraudulent act or judgment.

The parties are in their eighth decade. They were married for 34 years, and reared one child. After a legislative divorce in Canada, the husband remarried. The wife has resided in New York since 1952, and is wholly dependent on the income of the $450,000 trust set up under the transaction, yielding to her about $1,400 per month. Under Quebec law the married couple held the after-acquired assets of the marriage in community property. The second amended complaint alleges that the community property was worth upwards of $25 million to $30 million. The complaint also alleges an involved multitransfer scheme to defraud the wife of her half interest in the community and the use of fraudulent representations made by the husband through her own lawyers, with whom the husband had secret dealings not known to the wife, in order to induce her to enter into the consensual transaction. The truth or falsity of these allegations is yet to be tested. If defendant husband succeeds in his plea of *res judicata* in bar the truth of the allegations will never be tested in the courts of this State, or probably anywhere.

The litigation has been bitterly fought with multiple motions and appeals. The transaction occurred in 1950. The wife claims to have discovered the true facts in January, 1955, and this action

was begun in May, 1955. In the ensuing 10 years the merits have never been explored by affidavit or testimony.

The first issue is whether Quebec allows a separate action for damages for extrinsic fraud, in an action such as this. Here the former wife is not attacking the transaction. She wants to continue it in effect and recover money damages measured by the difference between what she was entitled to receive by way of settlement for her interest in the community property and what she actually received under the fraudulently obtained transaction.

The wife's claim is not unlike that of a buyer who seeks to affirm the contract of sale by retaining the property but nevertheless recover damages because the sale was fraudulently procured and the property was not as represented (*Fitzgerald* v. *Title Guar. & Trust Co.*, 290 N. Y. 376, 378–379; 3 Williston, Sales [Rev. ed.], §§ 645–646).

The Canadian commercial precedents suggest strongly that the rule in Quebec and in code law countries is completely in accord with the established rule in common-law countries. In *Feffergrad* v. *Weiner* ([1962] Rev. Leg. [Can.] 513 [Superior Ct.]), the purchaser of real property was held entitled to recover damages for fraud inducing the sale, without either rescinding the sale or bringing an action to annul the contract. The opinion of Mr. Justice CHALLIS states (p. 521): "French doctrine and jurisprudence (based on Art. 1117 c. n. which is for all practical purposes almost identical with Art. 1000 c. c.) is almost unanimous, that, in the case of dol [fraud], the victim is not obliged to ask for the cancellation of a contract but can ask for a reduction of the price or for damages based on Art. 1382 c. n. which corresponds with our Art. 1053 c. c." Similarly in *Bellerose* v. *Bouvier* ([1955] Qué. B. R. 175) the court held that the buyer of a tavern, without rescission, could recover damages for the seller's misrepresentation of the amount of beer sold during the prior year, and rejected the buyer's appeal solely for insufficient proof of damage. In the *Feffergrad* case, the court rejected arguments made by defense counsel that the *Bellerose* case had been wrongly decided. It went on to discuss a number of other precedents on the precise question, and rejected or distinguished those which precluded or seemed to have precluded a right to damages without rescission.

The authority, involving a prior transaction, on which defendant relies is not to the contrary. In *Watson* v. *O'Shea* (34 Qué. B. R. 236 [1922]), the court, in reversing the judgment for damages obtained in the action, stressed that no fraud was proven in the procurement of the prior transaction. It stated expressly

because of such lack that the judgment must be reversed.  It was pointed out that the jury had made no finding of fraud, despite pleadings and contentions to that effect.  Moreover, the repeated dicta are strongly to the contrary to the proposition for which defendant cites this case.  Thus, Mr. Justice MARTIN said (p. 238): " I do not think the question of the validity of this discharge was a fact which should have been left to the jury, though *perhaps if they had found it was invalid by reason of fraud,* false representations, intimidation or spell of enchantment, *such reason of invalidity might prevail* ".  (Emphasis added.)  Mr. Justice GREENSHIELDS spoke to the same effect (p. 240).  Mr. Justice TELLIER and Mr. Justice RIVARD did not disagree.  Indeed Mr. Justice RIVARD said pointedly: " If there had been fraud the question would be different " (243).*

Even if the Quebec precedents did not allow a separate action for damages without first setting aside the transaction or judgment for fraud, plaintiff is still entitled to prevail on this appeal.  If the transaction was procured through fraud, as the court must assume, and if Quebec affords any remedy to set the transaction aside, then the transaction should neither be recognized nor enforced in this State (Restatement, Conflict of Laws, 2d, T. D. No. 10 [April 27, 1964], § 440).  *Comment f* to the cited section states: " Judgments rendered in foreign countries are not entitled to the protection of full faith and credit.  Such judgments will neither be recognized nor enforced in a State of the United States under the circumstances stated in the rule of this Section; namely when the judgment is subject to attack in the state of rendition on grounds discussed in this comment and forum procedure permits interposition of this defense."  Thus this rule raises the question whether the transaction would be subject to direct attack in a special proceeding brought in Quebec.  Of this there can be little doubt.

It is eminently clear that in Quebec the transaction is vulnerable for fraud, quite consistently with its status as a judgment.  Moreover, beyond its vulnerability for fraud as a judgment, the statute provides that a transaction may be annulled for the same cause as contracts generally, errors of law excepted (Civil Code, art. 1921).  Defendant, far from denying the existence of a remedy by direct attack under article 1921, argues only that such a procedure was a condition precedent to plaintiff's right to bring this action.  The availability of such a direct remedy, is, moreover, generally recognized in this country (Restatement, Judgments, §§ 121, 122).  The rule, of course, is different where

* ". S'il y avait eu fraude, la question se poserait différemment."

the judgment is attacked for intrinsic fraud and the like (Restatement, Judgments, § 126).

Even if the transaction were not vulnerable for fraud in the foreign country (Quebec) in which it was rendered, no extranational judgment is entitled to recognition in the forum if it had been procured by fraud. This is an elementary principle in private international law (*Johnston* v. *Compagnie Generale Transatlantique,* 242 N. Y. 381, 388; Restatement, Conflict of Laws, 2d T. D. No. 10, § 440 incl. *Comments a* and *f*; Ehrenzweig, Conflict of Laws, 198–199; Goodrich, Conflicts [4th ed.] 397–398; 23 N. Y. Jur., Foreign Judgments, § 18). The principle remains firmly unchanged. Thus in the Restatement of Conflict of Laws (2d, T. D. No. 10, *supra,* § 440, *Comment f*) states in part: " Even if the judgment is not subject to relief in the state of rendition, it will in all probability nevertheless be denied recognition and enforcement in a State of the United States if a judgment rendered under the same circumstances in that particular State would there be subject to equitable relief."

Not to be confused with an extranational judgment entitled to full faith and credit under the principles of comity is an interstate judgment entitled to full faith and credit by mandate of the United States Constitution (art. IV, § 1). It was with the shield of the Constitution protecting it that the Louisiana transaction judgment was considered in *Oglesby* v. *Attrill* (105 U. S. 605). Had the Supreme Court in that case held that the Louisiana judgment was not vulnerable to a collateral attack for extrinsic fraud, it would still not have any application to this case, just because an interstate judgment rests on a different footing than an extranational judgment. The fact, however, is that the court did not so hold. The opinion states expressly (p. 610) : " There is no averment that it [the compromise judgment] was induced by any false representations of the plaintiff or of the directors  *  *  *  or that there was any concealment of the affairs of the company ". The court went on by way of dictum, it is true, to say that if there had been fraud a collateral attack would not succeed but that a direct proceeding to rescind it for fraud would be necessary, citing a Louisiana authority (p. 611). But to repeat, this was an interstate judgment entitled to full faith and credit by mandate of the Constitution. The distinction is critical (see cases collected in New York Annotations [1935] to Restatement, Conflict of Laws, § 440).

A word should be said about *Weintraub* v. *Weintraub* (302 N. Y. 104), although neither on the hearing nor on this appeal are the merits reached, and the rule in that case would involve the merits, if it were at all applicable. There the plaintiff wife

sought to sue in New York for fraud in the inducement of a separation agreement which, by its express terms, was to continue in effect with respect to any subsequent divorce decree between the parties and be deemed to have been there incorporated. A New Jersey divorce judgment ensued, and it did not refer to the separation agreement. The court, after reciting the usual common-law rule that one defrauded may elect either to rescind, or to affirm and sue for damages, noted that matrimonial support actions are different and must be governed by the statutes authorizing such actions. It then referred to the applicable New Jersey statutes governing the marital domicile and the divorce judgment of the Weintraubs. It was pointed out that the former wife was by indirect means seeking an increased level of support. The action was held properly dismissed.

The *Weintraub* case is completely inapplicable. Apart from the fact that it involved an interstate judgment entitled to constitutional full faith and credit, the action was considered an indirect device to obtain an increased level of support. The present case involves an extranational judgment and is not directly or indirectly for support. Plaintiff wife sues for fraudulent deprivation of her property rights under community property law and not for support at any level. Her recovery does not depend upon any showing of her needs, the preseparation standard of living or any other rule, applicable to a husband's obligation to support. All she seeks are damages for the fraudulent taking of her own property, which under community property principles are one half of the assets acquired by the married couple during the period of the marriage.

Accordingly, the judgment dismissing the affirmative defenses should be affirmed.

McNally and Stevens, JJ., concur with Staley, Jr., J., in opinion; Breitel J. P., dissents in opinion in which Eager, J., concurs.

Judgment reversed, on the law and on the facts, without costs and disbursements, and the motion to dismiss the second amended complaint granted.