Jones, J.
We hold that, in the absence of proof as to whether a foreign divorce decree and the separation agreement incorporated therein were subject to collateral attack on the ground of fraud in the foreign jurisdiction, it was error for the court on a motion for summary judgment to have adjudged that such decree and agreement were insulated from collateral attack in the courts of this State.
The record discloses that plaintiff wife and defendant husband, having been married for some 20 years, separated and in the fall of 1971 commenced negotiations looking to the execution of a separation agreement and their divorce. The negotiations were concluded on March 20, 1972 when a separation agreement was signed and the wife executed a power of attorney authorizing an appearance on her behalf in contemplated proceedings for a divorce in the courts of the Dominican Republic. Four days later on March 24 the husband obtained a divorce decree in the Dominican Republic, the wife having appeared by her attorney and the husband in person. On April 6, less than three weeks after the date of the divorce decree, the wife’s counsel learned from an announcement in the Wall Street Journal that the husband’s family business, in which he had a one-third interest, had been sold to Pepsico, Inc., for some $28,500,000. On June 19, less than three months after the divorce decree, the wife commenced the present action to set aside both the Dominican Republic divorce decree and the separation agreement on the ground of fraud.
In her complaint the wife alleged that the separation agreement was procured by the husband’s fraud in failing to disclose a material fact which would have substantially influenced her in executing the separation agreement and the related power of attorney—the contemporaneous negotiations for the sale of his family business. The husband countered that both parties had been represented throughout their *127 negotiations by separate competent counsel, that the wife knew of his interest in the family business, that he had fully and accurately responded to all requests from the wife’s counsel with respect to his financial worth and had furnished copies of his income tax returns for three years. He denied that in these circumstances he was under any obligation to volunteer information with respect to the pending negotiations for the sale of the family business.
On cross motions for summary judgment Special Term concluded that the husband was guilty of such fraud as would vitiate the execution of both the agreement and the power of attorney, but went on, without proof as to the pertinent law in the Dominican Republic, to hold that the action would not lie because the divorce decree could not be collaterally attacked in New York, and accordingly dismissed the action. The Appellate Division affirmed but noted its disagreement with the conclusion that fraud had been established. We now reverse the grant of summary judgment to defendant and remit for trial of the issues delineated herein.
It first must be determined, as a matter of procedure, whether a New York court may entertain a collateral attack for fraud on a divorce decree rendered in the Dominican Republic. In our view this procedural determination cannot properly be made on the record now before us; ultimate resolution of the issue will depend on a progressive analysis, the predicate for the first step of which is not now available.
The first step will be to determine whether the divorce decree and the separation agreement, or either, may be collaterally attacked in the courts of the Dominican Republic for fraud of the sort here alleged.* There is nothing in the record before us as to whether such an attack would or would not be permitted there. Nor has any request been made on appeal that judicial notice be taken of the laws of the Dominican Republic (cf. CPLR 4511, subds [b], [d]). Thus, this case must be remitted for resolution of this issue of foreign law. If on appropriate proof it is established that collateral attack would be allowed in the courts of the Dominican Republic, the procedural question would then be resolved.
Although not constitutionally mandated to do so, our courts *128 normally, although not always, accord to the judgment of a foreign country under principles of comity that recognition and effect to which a similar judgment of a sister State would be entitled under the full faith and credit clause (e.g., Schoenbrod v Siegler, 20 NY2d 403, 408; Rosenstiel v Rosenstiel, 16 NY2d 64). There are two aspects of the matter—first, if the foreign jurisdiction will permit a collateral attack, will we also; second, if the foreign jurisdiction will not permit such an attack will we likewise decline to do so?
Under the full faith and credit clause, and thus by extension under principles of comity, where collateral attack on the ground of fraud would be permitted in the courts of the foreign State in which the judgment had been rendered, our courts will entertain a similar challenge. (See, generally, Restatement, Conflict of Laws, 2d, § 115, Equitable Relief Available Against Judgment in State of Rendition; 1 Foster-Freed, Law and the Family [rev ed], § 9:1.) It follows then that if it is determined that the decree of divorce obtained by the respondent husband in this case would be subject to attack in the courts of the Dominican Republic for fraud of the sort here alleged, the court should then proceed to a consideration of the alleged fraud on the merits.
If on the other hand as to the second aspect, proof with respect to the laws of the Dominican Republic demonstrates that collateral attack would be barred in the courts of that Country or that there were doubts as to whether it would be permitted, the trial court in this case should nonetheless then consider, under principles of comity, whether there are here sufficient circumstances to warrant allowing collateral attack notwithstanding that such an attack would not be permitted in the courts of the Dominican Republic. (Cf. Schoenbrod v Siegler, 20 NY2d 403, 409, n 3, supra; Restatement, Conflict of Laws, 2d, § 115, Comment f; Reese, Status in This Country of Judgments Rendered Abroad, 50 Col L Rev 783, 790-800.) As to this aspect we do not now reach or express any view, contenting ourselves in the procedural posture in which the case is now before us only to suggest that this question is relevant if it appears that collateral attack would be barred in the Dominican Republic or even that there may be doubt as to whether it would be permitted.
If it is determined that the separation agreement, or the divorce, or both, are open to collateral attack in our courts (whether on the ground that such attack would be permitted *129 in the Dominican Republic, or that our courts should permit such attack even if it were barred in the Dominican Republic), the procedural hurdle will have been overcome, and the trial court will then be called on to determine whether in the particular circumstances of this case there was such conduct on the part of the husband as to vitiate the execution of the separation agreement and the power of attorney. (Compare, e.g., Riemer v Riemer, 31 AD2d 482, affd 31 NY2d 881, with Kantrowitz v Kantrowitz, 21 AD2d 654.) Although there are few, if any, material issues of fact that are controverted on the record now before us, we are satisfied that there are now insufficient facts to warrant granting any motion for summary judgment. This aspect of the litigation, too, must therefore be remitted for appropriate determination.
Accordingly, the order of the Appellate Division should be modified to the extent of reversing the grant of summary judgment to defendant and the case remitted for further proceedings in accordance with the views expressed herein.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order modified and case remitted to Supreme Court, Nassau County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed, with costs to abide the event.

 In passing we observe that analysis has not always called for an express prior determination of the state of the law in the foreign jurisdiction (e.g., Oppenheimer v Oppenheimer, 11 NY2d 838; Tamimi v Tamimi, 38 AD2d 197; Kantrowitz v Kantrowitz, 21 AD2d 654.)