OPINION OF THE COURT
David T. Gibbons, J.
This action was instituted by the plaintiff to set aside a consensual migratory divorce, rendered in a court of the Dominican Republic, and the separation agreement of the parties incorporated by reference therein, upon the ground of fraud.
The plaintiff alleges that in order to induce her to enter into the subject separation agreement and to execute a power of *445 attorney to authorize counsel to appear on her behalf in an action for divorce to be brought by the defendant in the Dominican Republic, the defendant falsely and fraudulently misrepresented and concealed the true nature and extent of his financial worth, and that in response to plaintiff’s attorneys’ request for information concerning defendant’s financial circumstances, they were furnished with copies of defendant’s income tax returns for the past three years, but the defendant fraudulently concealed from the plaintiff the existence of pending negotiations for the sale of the family wine importing business, Monsieur Henri Company, in which he owned a one-third interest.
Plaintiff claims, further, that the separation agreement and the power of attorney were signed by her on March 20, 1972. The defendant obtained the divorce on March 24, 1972, and that to perpetuate the fraud upon her, he accelerated the negotiations relating to the separation agreement and power of attorney and delayed the consummation of the sale of the business until about three weeks after the divorce was granted.
The plaintiff states that the facts pertaining to the sale of the business were not discovered by her until a news report of the same was read by her counsel in the Wall Street Journal of April 6, 1972, when, for the first time, she learned the selling price of the wine importing business was $28,500,000. This action was thereafter commenced on June 19, 1972.
On plaintiff’s motion for summary judgment and defendant’s cross motion for the same relief, the plaintiff alleges that the defendant’s failure to disclose such material financial information influenced her, to her detriment, to enter into this separation agreement which provided for inadequate support for herself and the children of the parties and was unconscionable, and had she been apprised of the pending negotiation for the sale of the business and the amount the defendant would receive therefrom she would neither have relied upon his statement that the support provision offered was "generous” and all that he could afford, nor would she have permitted him to "rush” her into signing the agreement.
The defendant, in opposition, contends that both parties were represented by competent counsel during the period leading up to the signing of the separation agreement and power of attorney; that he truthfully responded to the specific questions asked by plaintiff’s counsel concerning his financial *446 worth and had furnished copies of his income tax returns for the past three years; and that the plaintiff was fully aware of his interest in the family business and of certain prior negotiations for its sale.
The defendant denied the allegation that he "rushed” the plaintiff into making the contract while the negotiations for the sale were in progress and delayed the consumation of the sale until after the separation agreement and the power of attorney were signed by the plaintiff and the divorce was obtained by him.
In reversing an order of the Appellate Division, which, by a divided court, had affirmed an order of Special Term denying plaintiff’s motion for summary judgment and granting defendant’s cross motion for summary judgment dismissing the complaint, the Court of Appeals (40 NY2d 124) held that the dismissal was improper in view of the unresolved question as to whether the Dominican judgment of divorce could be collaterally attacked in the courts of New York and remanded the matter with a direction that before the underlying issue of alleged fraud can be determined, Special Term must pass upon the preliminary procedural question as to whether the law of the Dominican Republic would permit an attack upon its judgment or the separation agreement, or both, for fraud of the sort here alleged and, if not, whether the courts of this State would, notwithstanding, entertain such proceeding.
On plaintiff’s motion for a hearing to resolve the issue of the state of the law of the Dominican Republic in accordance with the direction of the Court of Appeals and for an allowance of counsel fees, pendente lite, to the plaintiff, the same was granted by interim order, dated December 13, 1977, to the extent that a hearing was scheduled at which the parties could submit expert testimony to enable the court to determine the above-mentioned preliminary procedural question.
Expert testimony concerning the law of the Dominican Republic was given at the hearing on behalf of the plaintiff by Henry P. de Vries, Esq., a member of the New York Bar, director of the Inter-American Law Center and Professor of Latin American Law at the Columbia University School of Law where he teaches and directs research in the civil law systems, including that of the Dominican Republic, and on behalf of the defendant by Dr. Guillermo Rodriguez, a graduate of the University of Autonoma, Santo Domingo, with a degree of Doctor of Law, and a practicing attorney admitted to *447 the Bar of the Dominican Republic, who specializes in matrimonial law and who has participated professionally in approximately 4,000 divorces for foreign nationals and about 100 divorces for residents since his admission in 1973.
Justice is administered in the Dominican Republic by a system of civil law which is a direct adaptation of French law under the Code of Napoleon. There is no organized reporting system of legal precedents, and reliance for legal interpretation is based upon the law of France. The expert witnesses referred to no reported decisions of the courts of the Dominican Republic but presented their respective opinions upon the basis of the several statutes which pertain to the law of divorce and fraud and how they would be applied by the courts of the Dominican Republic to the circumstances of this case.
The court has also read and fully considered the affidavit of Professor Henry P. de Vries, submitted on behalf of the plaintiff, and has read and fully considered the affidavits, submitted on behalf of the defendant, concerning the law of the Dominican Republic made by Dr. Manuel Ramon Ruiz Tejada, a former Chief Justice of the Supreme Court of the Dominican Republic, and by Henry H. Foster, Jr., Professor Emeritus of Law at New York University School of Law, member of the New York Bar and author of several treatises on foreign divorces and related aspects of matrimonial law.
CONTENTIONS OF THE PARTIES
The plaintiff contends (1) that conceding that the decree of divorce herein is by mutual consent of the parties and, therefore, not appealable under article 32 of the Code of Civil Procedure of the Dominican Republic, the same is, nevertheless, subject to a proceeding for "civil revision” to vacate it for fraud (dolo) under article 480 of the code which provides for such remedy in a case where the judgment is rendered in a "contradictoria” action, and (2) that the separation agreement herein is not incorporated by reference in the divorce decree herein, and since it is not clothed with the res judicata effect of the judgment, it may be attacked separately on the ground of fraud without consideration of the law of the Dominican Republic.
The defendant, in opposition, argues that the instant divorce decree is not subject to the remedy of "civil revision” to set it aside for fraud because it was not rendered in a "con *448 tradictoria” action within the meaning of article 480 of the code, and that since it is not subject to attack under the laws of the Dominican Republic, it cannot be set aside under the laws of this State because the fraud alleged is "intrinsic” and not "extrinsic”, which is the only kind which would permit such remedy in this action.
I. THE DECREE IS BY MUTUAL CONSENT AND THE DOMINICAN REMEDY OF CIVIL REVISION IS NOT AVAILABLE.
In defining the kind of decree which is subject to the remedy of "civil revision” as provided by article 480, the term "Las sentencias contradictorias” is used. The translation of this phrase, as testified by plaintiffs expert and as contained in the translation of the statute which was provided in plaintiffs Exhibit No. 2 in evidence, defines the term as, "Judgments by appearance of the parties”.
On the other hand, the testimony of defendant’s expert and the translations of this statute as set forth in defendant’s Exhibit C in evidence refer to the phrase as "Contradictory Decrees”.
The court finds that the translation submitted by the defendant is correct for the reason that the decree herein is based upon the mutual consent of the parties as provided by chapter II (art 2, subd a) of the Code of Civil Procedure and not, as demonstrated below, the result of a contested (contradictoria) proceeding.
Under the law of the Dominican Republic there are eight different grounds for divorce. They are listed from letter "a” to "h” and include the following: (a.) Mutual consent; (b.) Incompatability; (c.) Absence decreed by court in accordance with chapter II of title IV of the first civil code; (d.) Adultery; (e.) Conviction of crime; (f.) Extreme cruelty; (g.) Abandonment; and (h.) Habitual drunkenness.
The essential elements of the procedure prescribed for a divorce by mutual consent are set forth in articles 26 through 28 of chapter IV of the Code of Civil Procedure.
Paragraphs I, II and V of article 28 provide as follows:
"Paragraph I. — All of these agreements and stipulations must be formalized by authenticated instrument.
"Paragraph II. — Once the foregoing formalities have been fulfilled, the spouses shall, either personally or represented by the holders of officially certified powers of attorney, provided with the instruments in which the stipulations to which this *449 article refers are set forth, as well as with a copy of the marriage act and of the birth certificates of the children born during the marriage, appear before the Judge of First Instance of their domicile declaring that they propose to obtain a divorce by mutual consent and that they are asking him for a writ appropriate to establish their petition.
* * *
"Paragraph V. — Aliens who are in the country although they are not residents may have themselves divorced by Mutual Consent, provided that, while at least one of them is present at the Hearing and the other represented by the holder of a special power of attorney, they expressly agree to attribute jurisdiction to a Judge of First Instance in the instrument of conventions and stipulations executed by a Notary Public of the very jurisdiction of the Court designated by them. For a case as it is provided for in this paragraph, the provisions of Article 27 of this law shall not be applicable.”
In addition to the above-outlined procedure for a consensual divorce, the law of the Dominican Republic provides for a contested action commenced by service of a summons in a proceeding under chapter III of the Code of Civil Procedure entitled "Procedure for Divorce for Determined Cause”. The essential elements of such action are set forth in articles 3, 4, 6 and 7 as follows:
"Article 3. — Any divorce action for determined cause shall be brought before the tribunal or court of first instance of the judicial district in which the respondent lives if the latter has a known residence in the Republic; or before that of the residence of the plaintiff, if otherwise.
"Article 4. — The plaintiff shall have the respondent summoned, in the regular form of summons, to appear in person, or by an agent holding an officially certified power of attorney, at a closed hearing which the Tribunal or Court shall hold on the day and at the time indicated in the summons; and shall provide the respondent, at the outset of such summons, with copies of the documents which he will produce in support of his petition, if such documents exist.
* * *
"Article 6. — Upon expiration of the time-limit of the summons, whether the respondent does, or does not, appear at the Hearing, the plaintiff, in person or represented and with the assistance of his counsel, shall declare the motives for his *450 petition, submit the documents on which he bases it, have his witnesses heard, if any, and rest his case.
"Article 7. — If the respondent appears at the Hearing, either in person or by an agent holding a power of attorney, he can offer his observations concerning the motives for the petition, concerning the documents produced by the plaintiff or concerning the witnesses heard upon request of the latter. He may also, at the same Hearing, have witnesses heard whom he wishes to present, with respect to whom plaintiff, in turn, can offer observations. Respondent does not have the right to have witnesses heard if he has not furnished plaintiff with a list of them at least two working days prior to the day of the Hearing.” (Emphasis added.)
The divorce by mutual consent evolves from a proceeding which is essentially based on the subsisting consent of the parties, while a divorce brought "For Determined Cause” results in a judgment in a proceeding which is instituted by service of a summons which invites opposition to the petition by the respondent and is a contested proceeding in which the resulting judgment is characterized as "contradictoria”.
There is no evidentiary showing herein that a summons was served, nor that the action was contested by the defendant in the Dominican court.
The decree contains three specific references stating that it is by "Mutual Consent”.
In this connection it may also be noted that, by virtue of chapter II (art II, par I) of the Code of Civil Procedures, nonresident aliens may obtain divorces on grounds other than the grounds of Mutual Consent,” and paragraph II of the statute provides for such contested proceeding in the following language: "Paragraph II. — A non-resident alien can initiate a suit for divorce on the grounds listed in the letters b, c, d, e, f, g, and h of this Article without the other party being represented by an attorney, however the defendant must be notiñed of the suit for divorce at his place of residence, the same which will be accomplished through a competent authority. The defendant must answer the petition of the plaintiff within a period of fifteen working days after receipt of the notification through the competent authority, with the understanding that in the event the defendant does not answer the plaintiff’s suit within the period indicated above, it will be considered as acquiescence to the complaint. Upon receipt of proof stating *451 that the notification has been accomplished, the plaintiff will empower the corresponding Judge to proceed according to the terms, and in conformity with the Law 142, dated the 4th day of June of 1971, and rest his case.” (Emphasis added.)
The Feinberg divorce decree, however, was not rendered in such a contested (contradictoria) proceeding, in the sense that notification was given, or that conflicting evidence created an issue of fact for resolution by that court, but was one which was obtained in an uncontested proceeding.
For these reasons the court concludes that the divorce decree in this matter, not being "contradictoria”, is not subject to the remedy of "civil revision” under article 480 of the Code of Civil Procedure of the Dominican Republic.
II. THE SEPARATION AGREEMENT WAS INCORPORATED BY REFERENCE IN THE DECREE.
The divorce decree herein states in the "sentence”, the decretal provision, inter alia, as follows: "Second. — Declare to have had at sight the act of the contract and stipulations drawn up for the parties, declaring that the same is not affected nor modified for the present sentence and maintain its force in the original form, recognizing in this aspect, the parties are obligated to stay within the terms established for the laws of the place that they subscribed to.”
Although, by her complaint, the plaintiff alleges that the separation agreement is incorporated by reference in the decree, she has now offered proof at the hearing that she proposes to amend her complaint to allege the contrary. In this regard it may also be noted that in its opinion the Court of Appeals (40 NY2d 124, 126, supra) referred to the issue herein, "as to whether a foreign divorce decree and the separation agreement incorporated therein were subject to collateral attack on the ground of fraud in the foreign jurisdiction”.
In considering this newly advanced aspect of the case, the court observes that the plaintiff relies on her expert’s testimony to the effect that the separation agreement is not incorporated by reference in the judgment because he claims: (a.) that a Spanish translation of the separation agreement was not submitted to the Dominican court as required by article 102 of the Laws of Judicial Organization of November 21, 1927; (b.) that the decree makes no reference to the filing of the separation agreement with the court; and (c.) that the *452 decree must contain words of "approval” and not merely that the separation agreement was noted.
On the basis of the evidence given by the defendant’s expert witness in opposition to these contentions, the court finds that the specific reference to the existence of the separation agreement in the judgment by the court of the Dominican Republic, coupled with its direction that it "maintain its force in the original form” and that the parties shall comply with its terms in accordance with the law of the place where it was made, is a sufficient adjudicatory act by the court to warrant the conclusion that the agreement was considered by the court and is incorporated by reference in the judgment. This finding is further fortified by the provision contained in paragraph sixteenth of the agreement which provides in part as follows: "It is expressly understood and agreed that the right of either party to institute an action for absolute divorce shall remain unimpaired. This agreement shall survive any action for divorce, separation or annulment instituted by either party and shall not be extinguished by merger; no order, judgment or decree of divorce, separation or annulment, interlocutory or final, shall affect or modify the term of this Agreement, but the terms of this Agreement shall be incorporated by reference or otherwise, into any final decree or judgment of divorce, separation or annulment instiuted by either party to this Agreement”.
A similar contention that a separation agreement was not incorporated by reference in a Dominican divorce decree because not so definitively stated in the judgment of divorce was held to be without merit in Matter of Hoffmann v Hoffmann (94 Misc 2d 59), where the court held that, even though such specific words were not used, the decree was incorporated by reference and, therefore, capable of enforcement under article 4 of the Family Court Act.
The claimed omission of a Spanish translation of the separation agreement and the filing of the same are, at most, mere administrative irregularities which do not have the effect of preventing incorporation by reference, particularly in the light of the fact that the court did consider the document, refer to it, and direct compliance with it in the judgment.
In general, a party to a separation agreement may not collaterally attack the validity of the agreement on the grounds of fraud or mistake after it has been incorporated by reference in a valid bilateral decree of divorce, whether ren *453 dered in a sister State as in Rehill v Rehill (306 NY 126) and Lappert v Lappert (20 NY2d 364) or by the courts of a foreign country, as in Fink v Goldblatt (13 NY2d 957) and Resslhuber v Resslhuber (57 AD2d 552). And since the instant separation agreement was incorporated by reference in the decree, it likewise would, under the general rule, be immune from collateral attack for fraud.
This rule is, however, subject to the exception where, as stated in Schoenbrod v Siegler, (20 NY2d 403, 409): "the rendering nation would permit such an attack, it follows that the plaintiff 'may collaterally attack [the decree] in our courts’ and litigate the validity of the marriage which the divorce purportedly terminated. (Magowan v. Magowan, 19 N Y 2d 296, 299; see Bata v. Bata, 39 Del. Ch. 258, 282-291 [Del. Sup. Ct.] cert. den. 366 U. S. 964.)” (Emphasis added.)
Inasmuch as the judgment herein is neither appealable nor subject to the remedy of "civil revision” for fraud, the court now turns its attention to the question whether, notwithstanding the immunity of the judgment itself from attack for fraud under Dominican law, the plaintiff would be afforded relief under its laws insofar as fraud may affect the separation agreement alone.
Although the plaintiff has submitted evidence demonstrating that, by virtue of articles 1116, 1117 and 1303 of the Dominican Code of Civil Procedure, actions may be brought to recover damages and for rescission of contracts tainted with fraud, she has produced no credible evidence to show that under the laws of the Dominican Republic such legal assault úpon the separation agreement will be permitted as long as the judgment stands.
Under comparable circumstances, a settlement agreement of a dispute (referred to as a "transaction” under the laws of Quebec), which has the force of a judgment, was held in Cardy v Cardy (23 AD2d 117, 121) to be res judicata and not to be subject to an action for damages for fraud. The court there held as follows: "Quebec law does not enable a collateral action for fraud so long as the judgment persists.”
Although the claim is made by the plaintiff that the restriction against the attack on the "transaction” in Cardy under Quebec law does not exist under the law of the Dominican Republic, the court finds that such conclusion is not supported by a definitive showing of any Dominican law or statute on the subject.
*454 The Cardy case, as well as the decisions cited therein, express a policy derived from the French law of res judicata which imports to the "transaction” a finality which ends the underlying litigation and which precludes a separate attack upon a settlement agreement.
The restricted scope of the remedy of "civil revision” of a judgment for fraud, which is limited only to judgments in contested matters, and not, as here, to judgments based on mutual consent of the parties, evinces a similar strong Dominican policy of law to maintian the conclusiveness of such judgments, together with the separation agreements incorporated therein, and which does not provide for such separability between the judgment and the separation agreement as to afford a litigant the remedy of "civil revision” against the agreement while the judgment continues in full force and effect.
As to whether this court could in this matter create a condition of separability by recognizing the judgment and, at the same time, adjudicate the issue of alleged fraud with respect to the agreement, the rule to the contrary is stated in Lappert v Lappert (20 NY2d 364, 368, supra)) as follows: "It would perhaps be possible to recognize the Mexican divorce as having dissolved the marriage, but refuse to recognize it insofar as it adjudicated the personal rights and obligations of alimony and support. The reasoning of Rosenstiel v. Rosenstiel (16 N Y 2d 64), however, would not support such a distinction.”
For the reasons hereinabove set forth, the court determines, in answer to the first procedural question, that the laws of the Dominican Republic will not permit a collateral attack for fraud upon its judgment.
III. THE ALLEGED FRAUD IS OF A KIND WHICH WILL PERMIT A COLLATERAL ATTACK HEREIN.
The court will now turn its attention to the second aspect of the procedural question mandated for determination by the Court of Appeals.
Are there here sufficient circumstances to warrant allowing collateral attack, notwithstanding that such an attack is not permitted in the courts of the Dominican Republic? (Schoenbrod v Siegler, 20 NY2d 403, supra.)
If the alleged fraud (an issue to be resolved after a trial) was utilized by the defendant as a device to cause the plaintiff *455 to enter into the separation agreement and to execute a power of attorney by which she submitted herself to the jurisdiction of the courts of the Dominican Republic, such fraud will have had the effect of rendering the courts of that country jurisdictionally powerless to grant a divorce judgment affecting the marital relationship of the parties (Oppenheimer v Oppenheimer, 11 NY2d 838; Kantrowitz v Kantrowitz, 21 AD2d 654; Prime v Hinton, 244 App Div 181; Averbuck v Averbuck, 270 App Div 116).
In Prime v Hinton (244 App Div 181, 184, supra) the rule is stated as follows: "When jurisdiction is acquired as the result of a fraudulently induced appearance, a judgment based thereon is fraudulently procured and may be attacked collaterally. (Greenbaum v. Greenbaum, 147 Misc. 411; affd. 239 App. Div. 912; Abercrombie v. Abercrombie, 64 Kan. 29; 67 p. 539; Gray v. Richmond Bicycle Co., 167 N. Y. 348, 355.) Beyond any dispute, the appearance by the defendant by attorney in plaintiff’s action brought in the State of Nevada conferred jurisdiction upon the Nevada court. Without such appearance the judgment obtained by plaintiff would have been of no force or effect in the State of New York. (Cross v. Cross, 108 N. Y. 628; Baylis v. Baylis, 207 id. 446; Matter of Haffner 254 id. 238, 240.) In Greenbaum v. Greenbaum (147 Misc. 411, affd. by this court, 239 App. Div. 912) the plaintiff brought an action for separation and a decree invalidating a prior Nevada divorce obtained by defendant. In that case plaintiff had been induced to appear in the Nevada action by false and misleading statements. In the Greenbaum case the court said: 'Where, as here, there is a claim that the plaintiff was induced by fraud to appear in an action brought against her in another State in which she was not domiciled, a decree so obtained may be collaterally attacked and challenged in the matrimonial domicile of the parties. (Andrews v. Andrews, 188 U. S. 14.)’ ”
In reversing an order of the Family Court dismissing the wife’s petition for support, the court in Kantrowitz v Kantrowitz (21 AD2d 654, supra) stated the rule in the following language: "If, as contended by petitioner, jurisdiction of the Mexican court was acquired as a result of a fraudulently induced power of attorney and appearance by her, the decree of divorce obtained by respondent is not entitled to protection or recognition under principles of comity and may be attacked collaterally in the courts of this State. (Cf. Prime v. Hinton, *456 244 App. Div. 181, 183, 184 and cases cited; see, also, Querze v. Querze, 290 N. Y. 13; Averbuck v. Averbuck, 270 App. Div. 116; White v. White, 26 Misc 2d 631.)” (Emphasis added.)
And in ordering a new trial, the court, in defining the defendant’s burden of proof, also stated: "This instrument was to be used to his advantage for the purpose of severing the marital ties, so the burden was upon him to show that the petitioner executed the same freely and deliberately with a full understanding of her rights. (See 15 N. Y. Jur., Domestic Relations, § 210, p. 433; 41 C.J.S., Husband and Wife, § 120, p. 594; Scheinberg v. Scheinberg, 249 N. Y. 277; Matter of Smith, 243 App. Div. 348, 352, 353; Matter of Nowakowski, 1 A D 2d 250, affd. 2 NY 2d 618.) The record here shows the existence of issues of fact with respect to whether or not the respondent fraudulently misrepresented his then existing intentions as to his future support of the petitioner and as to his marital plans and whether petitioner relied upon same when she executed the power of attorney.”
The defendant claims that the judgment of divorce herein is immune from collateral attack for the reason that the alleged fraud is not extrinsic, but, at most, intrinsic.
The court, in Tamimi v Tamimi (38 AD2d 197, 204) defined the term "extrinsic fraud” as follows: " 'Extrinsic fraud has been defined as including fraud collateral to the question examined and determined in the action; fraud practiced in obtaining the judgment which may have prevented the defendant from having an adversary trial of the issue, or preventing the defendant from presenting fully and fairly his side of the cause * * *. Included in such definition are false representations * * * false promises of compromise.’ ” (Emphasis added.)
To the extent that the alleged fraud may have induced the plaintiff to execute a power of attorney and thereby submit herself to the jurisdiction of the Dominican court, the same is extrinsic fraud practiced in obtaining the judgment within the scope of the definition expressed in Tamimi. It may be shown at the trial herein that were it not for such fraudulent representations by the defendant, the plaintiff would not have submitted her marital rights to adjudication by a foreign court at a time when, because of her then ignorance of the alleged fraud, she could not raise such issue in that forum, and that she was thereby deprived of an opportunity to be then heard on that question.
*457 In dealing with a similar situation, the court in Prime v Hinton (244 App Div 181, 186, supra) stated: "The appellant erroneously assumes that the defense herein is based solely upon the deprivation of the opportunity to interpose a known defense in the Nevada action. The fact of the matter is, the defendant knew of no defense to the Nevada action. The existence of such defense was fraudulently concealed from defendant. Had he known the facts he certainly would not have appeared in the Nevada action, and would have defended the same. Having induced an appearance by defendant, through fraudulent representations made by plaintiff, such fraud vitiated the result flowing from said action. In none of the authorities cited by appellant was the essential question of jurisdiction involved. Indeed, the cases cited by appellant recognize that the fraudulent deprivation of an opportunity to interpose a defense is a proper basis for a collateral attack up to the time such defense was unknown to defendant, or could not have been ascertained by reasonable diligence. Gardiner v. Van Alstyne (22 App. Div. 579), relied upon by appellant, expressly holds: 'The fraud for which a judgment will be set aside is one in the concoction of the judgment.’ ”
Thus, in answer to the second procedural question, the court finds that, notwithstanding that the decree is unassailable under the laws of the Dominican Republic, the alleged fraud, if established, warrants a collateral attack on the judgment in this action. Should the divorce decree be vitiated by reason of the alleged fraud, the separation agreement, then no longer shielded by the res judicata effect of the judgment, would be vulnerable to attack for the same alleged fraudulent representation insofar as it may be established that the same was intended to and did cause the plaintiff to enter into the agreement.
Accordingly, the motion and cross motion are denied, and the issues of fact herein shall be resolved at a trial.
[Portions of opinion omitted for purposes of publication.]