■ NATASHA EILENBERG, Appellant-Respondent, v SAMUEL EILENBERG, Respondent-Appellant. — Order, Supreme Court, New York County (Egeth, J.), entered June 11, 1980, which in an action arising out of a separation agreement granted defendant leave to assert the defenses of Statute of Limitations and laches to those of plaintiff's claims that sounded in fraud, granted defendant's motion for summary judgment to the extent of striking plaintiff's cause of action for reformation of the separation agreement, and conditionally dismissed plaintiff's action for fraud unless further papers in proper form were submitted by a specified date, modified, on the law, without costs, to the extent of denying the motion to dismiss plaintiff's cause of action for reformation and reinstating that action, and otherwise affirmed. Order, Supreme Court, New York County (Egeth, J.), entered January 16, 1981, which granted defendant's motion for summary judgment dismissing plaintiff's causes of action for an accounting and specific performance, denied summary judgment dismissing the fraud claims on the ground of the Statute of Limitations, and granted summary judgment dismissing the fraud claims with regard to certain items and denied the motion with regard to others, modified, on the law, without costs, to reverse the granting of summary judgment dismissing causes of action for an accounting and specific performance and reinstating those actions, and otherwise affirmed. This already protracted litigation has its genesis in provisions of the separation agreement entered into between plaintiff and defendant on June 9, 1969, relating to their respective rights in what was described as the "Khmer Collection", "Khmer" being a style of ancient Cambodian art, and the "Collection" being part of a large collection of Southeast Asian art. The defendant, a mathematician by profession, had commenced collecting Southeast Asian art many years before his marriage to the plaintiff on August 11, 1960. Plaintiff joined him in collecting such art during their marriage. The agreement declared that plaintiff and defendant were owners of an undivided one half "of the sculpture and objects d'art known as the Khmer Collection" itemized in Schedule C annexed to the agreement, and that title to the collection was to be held by them "as joint tenants with right of survivorship". The agreement further required plaintiff's written consent to the lending of the collection or parts of it for exhibition purposes, required the consent of both parties to any sale of the collection, and directed that the proceeds of any such sale shall be paid to the plaintiff. In addition, the agreement regulated how the collection was to be warehoused and obligated the defendant to secure insurance coverage. It was further provided that the agreement was to be incorporated into and survive any decree of divorce and could not be waived or modified except by a written form of agreement. Exhibit C to the separation agreement listed 72 pieces of art as constituting the "Khmer Collection". It is undisputed that defendant compiled the list but that plaintiff thereafter reviewed and typed it. In June, 1969, defendant wrote plaintiff a letter confirming their oral agreement on storing the collection which included further details relating to its storage. Thereafter plaintiff commenced a divorce proceeding in the State of Chihuahua, Mexico. The defendant appeared personally and on June 17, 1969 the Mexican court granted plaintiff a divorce in a decree which incorporated the separation agreement and provided that it was to survive the decree of divorce. This action was commenced by service of a summons with notice on September 20, 1974, seeking specific performance and alleging breach of contract and fraud. On the same day, plaintiff moved by order to show cause for an order enjoining defendant from selling or substituting any piece of the collection without plaintiff's approval, alleging reason to believe that there had been various violations of the separation agreement with regard to it, and expressing concern that particular items had been disposed of without plaintiff's knowl-

edge or consent. Defendant thereafter arranged for an inspection of the collection by plaintiff and her counsel. The inspection disclosed the absence of one piece, Item No. 57 of Schedule C. Defendant explained that the piece had been lost when moved from one warehouse to another and offered to compensate. Thereafter plaintiff served a complaint which, in addition to that already set forth in the papers described above, alleged that the missing item had been improperly sold prior to 1969, and demanded damages, specific performance, an accounting and reformation of the contract. In the course of discovery proceedings, plaintiff came into possession of a notebook in which defendant recorded various of his acquisitions between 1957 and 1966. Following an examination of the notebook, plaintiff served an amended complaint on September 28, 1977, alleging that defendant had fraudulently failed to include in Schedule C 33 art objects which to his knowledge were part of the "Khmer Collection", and that plaintiff had relied on defendant's fraudulent representations. In addition to the prayers for equitable relief, plaintiff sought damages for fraud. In his first answer, served October 21, 1977, defendant denied the essential allegations and asserted a counterclaim not relevant to the issues presented in this proceeding. Thereafter, on February 27, 1979, defendant moved for an order permitting him to amend his answer to the amended complaint to assert the defenses of Statute of Limitations and laches, and further sought summary judgment on the claim that there was no factual issue as to fraud, and that the court lacked subject matter jurisdiction to reform a separation agreement incorporated into a Mexican divorce decree. In support of the motion for summary judgment, defendant asserted with regard to the 33 items alleged to have been fraudulently excluded from Schedule C that: (1) He had never owned two pieces; (2) Seven were in fact included in Schedule C; (3) Eleven were not Khmer pieces; and (4) Thirteen pieces had been sold prior to 1966. Plaintiff opposed defendant's motion to amend his answer to assert the defense of Statute of Limitations and laches and responded to defendant's motion for summary judgment dismissing the fraud claims with papers that Special Term found properly to be so poorly organized as not to permit a judgment on the issues purportedly addressed. In the first order appealed from, that dated June 11, 1980, Special Term granted defendant's motion to amend his answer, dismissed plaintiff's causes of action for reformation of the agreement on the ground that this remedy involved an impermissible collateral attack on the Mexican divorce decree, and conditionally granted summary judgment dismissing the fraud claims for damages unless plaintiff served by a fixed date more appropriately organized papers. Thereafter plaintiff submitted additional papers responding specifically and in detail to the issues raised, and setting forth further allegations with regard to alleged breaches of the separation agreement and letter agreement. In the order and decision entered January 16, 1981, Special Term dismissed plaintiff's actions for an accounting and specific performance, denied defendant's motion to dismiss on the ground of the Statute of Limitations, granted defendant's motion for summary judgment with regard to those items which defendant deposed were not Khmer items, as well as with regard to Item No. 57 of Schedule C referred to earlier, and otherwise denied the motion for summary judgment with regard to all but a few of the remaining items at issue, finding that factual issues were presented. With limited exceptions we are in agreement with Special Term's disposition of the multiple issues presented essentially for the reasons set forth in Special Term's carefully detailed opinions. Specifically, we agree with regard to those items that defendant asserted were not Khmer objects that he had been asked to exercise his judgment with regard to the classification of objects that are the subject of legitimate, academic disagreement, and that the

papers do not present a factual issue that he did so fraudulently. As to Special Term's determination with regard to the remainder of the 33 items, as well as Item No. 57, we are satisfied that his conclusions, obviously the product of a painstaking examination of the submitted papers, were correct. As to that part of Special Term's order dismissing the cause of action for reformation, we believe that it was correct on the basis of the papers that were submitted at Special Term. However, on this appeal both parties have moved this court to consider affidavits of experts on Mexican law with regard to whether or not a Mexican court in the State in which the divorce decree was entered would entertain a collateral attack on a separation agreement that was incorporated in a Mexican court's decree but that was stipulated in the decree as surviving it. The principle appears to be well established that a collateral attack on the underlying separation agreement is permissible in this State if the law of the jurisdiction rendering the judgment would allow an attack on its own judgment on the grounds alleged in the New York action. (See *Greschler v Greschler*, 51 NY2d 368, 376, n 3; *Feinberg v Feinberg,* 40 NY2d 124; *Schoenbrod v Siegler,* 20 NY2d 403, 409.) Rather than resolve on the basis of the sharply conflicting affidavits submitted for the first time on this appeal the issue as to whether a collateral attack would be permissible in the State of Chihuahua, Mexico, or undertake independent study of what appears to be an elusive issue of foreign law, we think the preferable approach is to remand in order to permit a fuller presentation of the issue. If, as a result of such a further presentation, it is determined that a collateral attack would be permitted in the Mexican State and is therefore permissible in New York, plaintiff would clearly be entitled to seek an accounting with regard to objects that may ultimately be found to have been fraudulently excluded from Schedule C by the defendant. Moreover, we are not persuaded that the papers submitted below present no factual issue with regard to defendant's compliance with various arrangements fixing his responsibilities with regard to the collection, and accordingly believe it was error to dismiss the action to the extent to which a specific performance with regard to such arrangements were sought. Accordingly, we reverse these aspects of Special Term's orders. Concur — Kupferman, J. P., Sandler, Sullivan, Bloom and Asch, JJ.